Gary Don JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–590.

Court of Criminal Appeals of Oklahoma.

June 3, 1976.

Charles W. Stubbs, Stubbs, Stiner & Pace, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Gary Don Johnson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–3495, for the crime of Robbery With Firearms, in violation of 21 O.S.1971, § 801. His punishment was fixed at a term of twenty-five (25) years' imprisonment, the first five (5) years to be served in the State penitentiary and the remainder to be suspended. From said judgment and sentence a timely appeal has been perfected to this Court.

On the night of October 13, 1974, one Lester Richmond was employed as a clerk for the Around the Clock Food Store located at 7505 S.E. 29th Street in Midwest City, Oklahoma. Richmond testified that it was his first night on the job and he was the only employee in the store that evening; however, one Kathy Davis, an acquaintance of his, was also present. He stated that around 11:30 p. m. a man entered the store, walked to the back, picked up a beer, opened it and, when the witness told him he could not drink inside the store, the man pulled a gun. He stated it was a .22 caliber blue steel revolver with brown grips and that the man had it hidden in a pocket of his blue jeans which was covered by his coat. He went on to relate that the man was standing a few inches from the store counter and approximately two and one-half feet from him with the gun pointed directly at his face. The man ordered the witness to keep quiet and demanded that the money be put in a brown paper bag or he would shoot both Richmond and Kathy Davis. Richmond stated that he put several ones, fives, tens, twenties and change into the bag. The man then picked up the bag and instructed the two not to call the police and walked calmly out of the store.

Shortly thereafter within a period of approximately one minute, a customer entered the convenience store and Richmond told him to call the police. The police arrived within four to five minutes and Richmond talked to the police that evening. He gave them a description of the man who had robbed the store and he talked to the officers on the following evening when

they returned to show him several photographs. On that occasion he identified the defendant from the photographs as the man who has robbed him. He stated that he had seen Gary Don Johnson at the preliminary hearing and also ten days before the robbery at the Glenwood Shopping Center. At that time Richmond had broken up a fight between the defendant and one of Richmond's friends.

On cross-examination, Richmond stated that he was arrested on February 14, 1975, as a material witness in this particular case but denied having previously received a subpoena to appear for trial. He also admitted making the statement at the preliminary hearing that at age 16 he was convicted of assault with a deadly weapon.

On redirect examination, the witness testified that he had cooperated with the police on the evening after the robbery by giving a description of the robber and had failed to appear at court only because he did not know when he was to testify. He also clarified the controversy over the assault with a deadly weapon charge by explaining that he had entered a plea of guilty to the crime on May 10, 1974, and the case had been dismissed. The witness was later recalled by the State and testified that he was fired from his job after the robbery because he had lost more than $50.00.

Ted Askew, an officer with the Midwest City Police Department, testified that on October 13, 1974, he responded to a call from police headquarters informing him that an armed robbery had just occurred at the Around the Clock Food Store. After arriving at the scene he spoke to the two victims and Lester Richmond gave him a description of the man who had robbed him.

Stan Brown, also an officer with the Midwest City Police Department, stated that on the 14th day of October, 1974, he took part in an investigation of the robbery involved herein and had an occasion to interview the complaining witness, Lester Richmond. Officer Brown took him to the Midwest City Police Station and displayed seven pictures to him, among which was a photograph of the defendant. Subsequently, Officer Brown prepared his report which formed the basis of the charges filed in the present case. The witness further stated that Kathy Davis, the other person present at the time of the robbery, had since gone to Missouri and he had not been able to speak with her.

Eddie Thompson stated that he was a detective with the Midwest City Police Department and that he had been involved with the followup investigation of the Around the Clock Food Store in October, 1974. The witness related that the store, located at 7505 S.E. 29th Street, was in Oklahoma County.

The defendant then took the stand in his own behalf and testified that he was present at the Around the Clock Food Store on the evening of October 13, 1974, at approximately 10:00 p. m. when he stopped to buy a six pack of beer and a package of cigarettes. He stated that Lester Richmond and Kathy Davis were in the store at the time. When he approached the checkout counter, Richmond said, "Don't I know you?" and the defendant replied, "Yeah, you probably do. I was up at that store that night," referring to the incident some ten days before at the Glenwood Shopping Center. The defendant related that he then paid for the items and left the store. Upon leaving he proceeded to his home, which was approximately five blocks away, and remained there for about 30 minutes to an hour. He then went to Leslie's Bar, located at Reno and Douglas Boulevard, ate dinner and had several drinks. Upon leaving the bar, at approximately midnight, the defendant drove across the street to a park and slept there for three or four hours and on awakening drove home.

In describing the incident at the Glenwood Shopping Center ten days prior to the alleged robbery, the defendant stated that it all began when he accidentally

bumped into an intoxicated Indian male who in turn shoved him. Defendant was preparing to strike the man when his brother-in-law stopped him. After their meal, the Indian male still continued to make derogatory remarks and at this point Lester Richmond stepped in between the two men and broke up the fight. Thereafter the defendant walked outside and, provoked by the man's comments, struck him. The defendant went on to relate that Lester Richmond had called him "dirty names" and told him to leave his friend alone. Later that night several of the same men came to the defendant's home, spoke to his brother-in-law and threatened the defendant. Further, the defendant stated that he did not own a gun.

On cross-examination, the defendant testified that he was hiding in some bushes when Lester Richmond, the Indian male and several others drove up in front of his house after the incident at the Glenwood Shopping Center. When the men drove away, the defendant began walking towards the street. The police arrived soon after but the defendant did not speak to them or report any trouble. The defendant also admitted that he had been picked up on a charge of driving while intoxicated two days after the robbery and questioned at that time.

Donnie Wayne Johnson, the defendant's younger brother, testified that he was present at the defendant's preliminary hearing when Lester Richmond approached him prior to the hearing and said he wished the charges would be dropped against the defendant because he thought that he had identified the wrong man.

On cross-examination, the witness stated that he had never met Lester Richmond before Richmond walked up to him in the courthouse hallway and made this statement. He also explained that no one else was present at the time, but that he had reported the incident to his brother's attorney. However, he also admitted that Richmond went on to identify his brother at the preliminary hearing as the person who had robbed him.

Roy Garrett stated that he was a friend and former business partner of the defendant. He testified that in his opinion the defendant's reputation for truth and veracity was good and he believed him to be a law-abiding citizen. He also stated that the defendant was presently working for him as a painter's helper.

In his first assignment of error, the defendant alleges that his constitutional rights were violated and that he was denied due process of law when he was placed on trial twice for the same offense. He bases his contention upon the events which took place February 12, 1975. At that time the defendant's case, District Court Case No. CRF–74–3495, came on for jury trial. Both sides announced ready for trial and the jury was impaneled and sworn to try the case. At that time a hearing was held outside the presence of the jury and the court declared a mistrial at the instance and request of the defendant. The jury was then discharged. There is no explanation for the discharge in the record.

With defendant's contention we cannot agree. In the case of *Pickens v. State*, Okl.Cr., 393 P.2d 889 (1964), this Court clearly set forth, in the third paragraph of the Syllabus, the necessary elements for double jeopardy to occur as follows:

"Before jeopardy attaches, each of the following conditions must exist:

"First; the defendant must be put upon trial before a court of competent jurisdiction.

"Second; the indictment or information against the defendant must be sufficient to sustain a conviction.

"Third; the jury must have been impaneled and sworn to try the case.

"Fourth; after having been impaneled and sworn, the jury must have been unnecessarily discharged by the court.

"Fifth; such discharge of the jury must have been without the consent of the defendant."

Only when these things occur can the discharge of the jury constitute jeopardy and operate as an acquittal of the defendant, and he cannot be placed upon trial for the same offense. It is obvious from the record before us that the defendant's contention must fail in that the necessary fifth element, as set forth above, did not occur in the case at bar. The following District Court minute is pertinent to this issue. It stated:

". . . COURT DECLARES MISTRIAL AT INSTANCE & REQUEST OF DEFT . . ."

It therefore becomes apparent that the discharge of the jury was at the defendant's request, rather than without consent of the defendant.

■ Furthermore, it is a well recognized rule of criminal law that the privilege of immunity from a second prosecution given by the United States Constitution in the Fifth Amendment and bolstered by Article 2, § 21, of the Oklahoma Constitution, can be waived. This waiver can take the form of expressed consent or may be implied by the failure to claim or assert this right. In the instant case the record is void of any showing that the defendant presented this matter of former jeopardy to the trial court for consideration. This Court stated in *Anderson v. State*, Okl.Cr., 502 P.2d 1299 (1972), as follows:

"However, if defendant relies upon the constitutional prohibition against double jeopardy, he may have waived his right by not entering a plea of former jeopardy in the trial court; or otherwise asserting a jeopardy bar before or during his trial. Immunity from second jeopardy can be waived by failure to claim or assert the right. . . ." (Citations omitted)

In accordance with the above discussion, we find this assignment of error to be without merit.

In his final assignment of error the defendant alleges that there was an irregularity in the introduction of evidence which was violative of the Oklahoma law and prejudicial to his constitutional rights. He argues that Lester Richmond, one of the victims in the instant case, made his identification of the defendant from "mug shots" shown to him after the robbery and that these photographs were never introduced at trial. The thrust of defendant's assignment of error appears to be his contention that the in court identification was improper since there was a possibility that it was tainted by pre-trial procedures so unnecessarily suggestive and conductive to irreparable mistaken identity that he was denied due process of law. See, *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In other words, it appears that his contention is that the testimony of the eye witness naming the defendant as the man who robbed him should have been excluded because his opinion may have been based on an illegal and prejudicial display of certain pictures.

■ We are of the opinion that the instant assignment of error is improperly before the Court on appeal for the reason that the defendant neither objected to the pre-trial identification at any point prior to the trial, for example by way of motion to suppress, nor did he object to the identification of the defendant by the witness Richmond at the time of trial, nor did he make a timely request for an evidentiary hearing whereupon the trial court could ascertain if the in court identification was based on an independent source sufficiently distinguishable to be purged of the primary taint of the alleged illegal pre-trial identification. Absent this timely objection and request for an evidentiary hearing, we are compelled to find this assignment of error to be without merit. See, *McKee v. State*, Okl.Cr., 532 P.2d 472 (1975) and *Bridgeman v. State*, Okl.Cr., 496 P.2d 431 (1972).

■ The jury returned a verdict finding defendant guilty of the offense charged,

but left the punishment to the trial court. Attached to the presentence report was a copy of the Oklahoma State Bureau Charge Sheet which reflects several arrests sustained by defendant, but none of those arrests have been brought to conviction. Therefore, insofar as this is the first conviction sustained by defendant, and considering that no personal injury resulted in the robbery, we believe the sentence of twenty-five (25) years is excessive and should be modified. It is therefore the order of this Court that the sentence herein be modified to ten (10) years with the first five (5) years to be served in the State penitentiary and the last five (5) years to be suspended. As *MODIFIED* the judgment and sentence is *AFFIRMED*.

BUSSEY and BLISS, JJ., concur.