**Alonzo Tyronne WILLIAMS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–267.**

Court of Criminal Appeals of Oklahoma.

Nov. 8, 1977.

**258**

Richard A. Hoffman, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Alonzo Tyronne Williams, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, for the offense of Carrying a Firearm, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1283. On the 30th day of September, 1976, the defendant was convicted by a jury and sentenced to serve eight (8) years in the custody of the Department of Corrections. The trial court pronounced judgment and sentence on the 18th day of October, 1976, in accordance with the verdict of the jury. From said judgment and sentence the defendant has filed this appeal.

At the trial, the State called two witnesses. Both were identified as uniformed Tulsa police officers. The first, Officer John Uhles, testified that on the afternoon of June 8, 1976, he received a police broadcast directing him to go to the 500 block of North Greenwood Avenue, in the City of Tulsa, Tulsa County, Oklahoma, to investigate a report of a man who pointed a pistol at a lady. Officer Uhles was informed that the perpetrator had entered a taxi cab belonging to Service Cab Company and bearing identification number 212. Upon approaching the 500 block of East Mohawk in Tulsa, the officer observed that cab with two occupants, a driver and a passenger. The officer approached the taxi cab as it was coming to a halt. He saw the defend-

ant get out of the car and start toward a home in the neighborhood. The officer observed the defendant throw something over a picket fence. At this time the defendant returned to the right side of the cab at which time the officer instructed the defendant to place his hands on the cab so he could be searched for weapons. The officer had his service revolver drawn and pointed at the defendant. The defendant reached in his right front pocket and pulled out a pistol. After seeing the pistol Officer Uhles instructed the defendant to drop it and put his hands on the cab. At this time the defendant went to the front of the cab so that the cab was between the defendant and the officer. The officer noticed the driver exit the cab and leave in a hurried manner while at the same time the defendant was bringing his gun up over the hood of the cab pointing it at the officer. The officer then cocked his gun and told the defendant he would kill him if he did not throw it down. After hearing this the defendant threw an object across Mohawk Boulevard into a ditch about thirty feet away. At approximately this time Officer Waller arrived and took custody of the defendant while Officer Uhles recovered the weapon. He identified State's Exhibit No. 1 as the pistol, and testified that the gun was fully loaded when he recovered it from the ditch.

The next witness for the State was Officer Gary Steven Waller whose testimony was essentially the same as that of Officer Uhles. However, Officer Waller did not arrive until the defendant had already thrown the gun. He did not see the defendant in possession of the pistol, but he did see Officer Uhles recover it from the ditch. He, too, identified State's Exhibit No. 1 as that pistol.

After the State rested and the defendant's demurrer was overruled, the defendant called as his first witness Jewel Anderson, who was the cab driver mentioned above. Mr. Anderson testified that he picked up the defendant and took him to a 7–11 Store at Cincinnati and Mohawk. Upon leaving the store the defendant di-

rected Mr. Anderson to return to the residence. Mr. Anderson stated that he had already stopped his vehicle before a police unit arrived and that a policeman jumped out of his vehicle and pointed his gun at the defendant. He stated that he ran across the street to get out of the line of fire. Mr. Anderson testified that he never saw a gun in the hands of the defendant. On cross-examination he stated that he observed Uhles recover a gun in the area.

The next witness called on behalf of the defendant was Thomas Roland McDermitt, Jr. Mr. McDermitt indicated that he was a self-employed window washer and that he lived next door to the residence of 542 E. Mohawk in Tulsa. He indicated that while he was watching television he noticed the red lights of a police car and looked out his window to see what was occurring. The first thing he noticed was a policeman in back of the taxi cab with a gun pointed at the defendant. He further indicated that he never saw a weapon in the hands of the defendant.

For his first assignment of error the defendant alleges that the Assistant District Attorney engaged in activities throughout the course of the trial that were so prejudicial as to deny the defendant a fair and impartial trial. Under this assignment of error the defendant raises seven specific errors, of which we shall address only the first two, the first of which is that the Assistant District Attorney attempted to define reasonable doubt during voir dire. The precise language complained of is found in the transcript at page 22. It reads as follows:

"In a civil case the preponderance of the evidence is the burden whereas in a criminal lawsuit the State of Oklahoma, the people, have a burden of proving beyond a reasonable [doubt] the defendant's guilt. The purpose of the voir dire is to explain things like that to you and I want to know if there is anybody here who fails to see the distinction between the two types of lawsuits? This particular burden of proof that is placed upon the State is nothing new. Is everybody aware that it's been around as long as our system of justice has been around? Does anybody have any quarrel with the burden of proof that the State has? Fine. The burden that I have just mentioned to you, is there anybody here who feels that beyond a reasonable doubt means beyond all doubt or beyond a shadow of a doubt as the TV and movies like to portray?"

The defendant's objection to the above statement was overruled by the trial court.

■ We have stated numerous times that "reasonable doubt" is self-explanatory, and that therefore definitions thereof do not clarify the meaning of the phrase, but rather tend to confuse the jury. Compare our discussion in *Templer v. State*, Okl.Cr., 494 P.2d 667 (1972). In support of his argument the defendant cites *Gresham v. State*, Okl.Cr., 396 P.2d 374 (1964), where this Court disapproved of a prosecutor defining reasonable doubt in his closing argument *Gresham*, however, can be distinguished from the instant case. In *Gresham* we held that the prosecutor grossly and incorrectly defined reasonable doubt; but in the instant case we are of the opinion that while it was error for the prosecutor to attempt to define reasonable doubt in his voir dire of the jury, nevertheless his definition was not grossly incorrect. The defendant suffered no prejudice from the prosecuting attorney's actions, and the action of the prosecutor does not require reversal. However, we condemn the attempt of the prosecutor to define reasonable doubt and admonish prosecutors to refrain from such attempted definitions in the future.

■ We have reviewed the several other allegations of error within the first assignment of error, and find that only one of them merits discussion, since the errors complained of were either cured by actions of the trial court during the trial of this case, or else are without merit. We find that Mr. LaSorsa committed error when during the opening statement the following transpired:

"BY MR. LaSORSA:

"Ladies and gentlemen, to this Information the Defendant has entered his plea

of not guilty placing each and every material allegation of said Information at issue here today. By that I mean to say that the Defendant, if he had pled guilty, there would be no need to place these material allegations in issue today.

"MR. HOFFMAN:

"Your Honor, I'll make an objection to that as being a reference to the Defendant's right to a jury trial.

"BY THE COURT:

"I'll sustain the objection. Jurors, I think we have indicated that the plea of not guilty puts in issue every material allegation. We will let Mr. LaSorsa go on into the evidence that he anticipates introducing."

While the defendant's objection to the remarks of the prosecutor were sustained and the defendant did not request a mistrial or further admonition, and while the error does not require reversal, we will consider these two errors in dealing the defendant's second assignment of error.

For his second assignment of error the defendant alleges that the punishment he received is excessive. In the instant case the State recommended the maximum punishment of ten (10) years. The jury assessed punishment at eight (8) years, and ordinarily we would affirm the sentence imposed by the jury. However, in view of the two errors heretofore set forth, we are of the opinion that the judgment and sentence should be MODIFIED from a term of eight (8) years' imprisonment to a term of five (5) years' imprisonment, and as so MODIFIED the judgment and sentence appealed from is AFFIRMED.

CORNISH, J., and BRETT, J., concur.