Jake UNDERWOOD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–695.

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1983.

David Luther Woodward, Sp. Counsel, Appellate Public Defender Project, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena Louise Bates, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Jake Underwood, was convicted with codefendant Bobby Kelly Ozbun of Murder in the Second Degree, in Tulsa County District Court, Case No. CRF–79–3327, he was sentenced to a term of not less than fifteen (15) years nor more than thirty (30) years' imprisonment, and he appeals.

At trial, twelve-year-old Shirlene Young testified that at about 8:00 P.M. on November 2, 1979, she was playing in a bedroom of her family's home, located at 1735 East Latimer Court, in Tulsa, Oklahoma, with her nine-year-old friend, Victoria Robinson, and they heard gunfire coming from outside a window near the street. When something broke the window, the girls ran into the adjoining room. As they entered the living room "something" hit Victoria in the head, she fell to the floor bleeding from a massive wound, and died very soon thereafter.

Officer Larry Johnson of the Tulsa Police Department testified that the appellant, Underwood, after having been advised of his *Miranda* rights, which he said he understood, stated that on the date and time above mentioned he, accompanied by three other persons, had gone to a house in the 1700 block of East Latimer Court guided by a young boy, and that he had fired shots at the house from a .12 gauge pump shotgun; however, Underwood maintained that the rounds contained only birdshot. In addition, Officer Johnson related that Underwood had stated that another member of the party fired an additional weapon at the house.

Testimony of Lucinda Ross taken at a preliminary hearing was admitted into evidence at trial. She stated that she and the

appellant, together with Ozbun and Ozbun's sister Erbie Webb, went to a house that her son Jamie Ross pointed out as the Youngblood residence, in Ozbun's light colored Pinto automobile, and that shots were fired from that vehicle into the Youngblood house. Further, she related that Underwood had taken a shotgun from the back of the car, and that three (3) shots were fired from it. Later, she took the gun to her house, but soon entrusted it to a friend.

Alva White, a neighbor of the Youngblood's, testified that on the evening in question he heard shots being fired and saw a light colored Pinto automobile leaving the residence.

In addition, various police officers testified about the condition of the scene of the crime, and physical evidence obtained therefrom. They found among other evidence three (3) .22 caliber shell casings, wadding from a shotgun shell, and two (2) .22 caliber slugs embedded in a wall, numerous embedded shotgun pellets, and a large piece of lead with human hair attached was found in a shattered acquarium in the living room.

Medical examiners testified that the victim died of a massive head wound (about 4½ inches long in the back and about 2 inches long in the forehead). The wound was compatible with a wound which would be caused by a deer slug.

## I.

In his first assignment of error, Underwood claims that he has been denied his constitutional right to appeal because of the failure of the court clerk to preserve the record in that the foreman of the jury took the jury instructions home with him as a souvenir. In support of his allegation the appellant relies upon numerous cases which require reversal when the integrity of the record is not maintained; however, the facts before us are readily distinguishable from the authority cited by the appellant, as no substitution of the records could be had in them. In the instant case the foreman returned the jury instructions to the court clerk's office when they were requested, and the record before this Court currently contains a certified copy of the jury instructions and sworn affidavits from the jury foreman and the court clerk's office. We find that the jury instructions were ably substituted in the case at bar, and thus no error has occurred. This assignment of error is without merit. See, *Avants v. State*, 544 P.2d 539 (Okl.Cr.1976).

## II.

Next, the appellant alleges that the prosecutor committed reversible error by attempting to define the term "reasonable doubt" during voir dire of a potential juror. The record reflects the following:

MR. BAKER: The phrase beyond a reasonable doubt you've heard many, many times and will hear again many times, if you are selected to serve on this jury. The Court won't go into an explanation for you what a reasonable doubt is. That's left up to reasonable people to determine, but it's not any doubt; it's not the shadow of a doubt—

MR. BURNS: I need to object and ask for an admonition and move for a mistrial.

THE COURT: Overruled.

MR. BAKER: It is a reasonable doubt. You'll follow that instruction along with the others' will you not, Mr. Wear?

MR. WEAR: Yes, sir.

Appellant is correct in his assertion that this Court has stated numerous times that " 'reasonable doubt' is self-explanatory, and that therefore definitions thereof do not clarify the meaning of the phrase, but rather tend to confuse the jury." *Williams v. State*, 572 P.2d 257 (Okl.Cr.1977). It is also true that the comment complained of in the current case is comparable to the one that this Court condemned in *Williams*, supra, which caused us to admonish prosecutors "to refrain from such attempted definitions in the future." We again renew our previous admonition. However, as was also stated in *Williams*, supra: "[W]hile it was error for the prosecutor to attempt to define reasonable doubt in his voir dire of the jury, nevertheless his definition was not grossly

incorrect. The defendant suffered no prejudice from the prosecuting attorney's actions, and the action of the prosecutor does not require reversal." This is especially true in a case such as the case at bar where the prosecutor's attempt to define reasonable doubt was a response to the defense attorney's prior definition of the term.[1]

### III.

■ In another assignment of error, Underwood contends that prejudicial evidence admitted at trial was the product of illegal searches and seizures. Specifically, the appellant complains of the impoundment and the searching of an automobile belonging to codefendant Ozbun which yielded two .22 caliber shell casings, and another automobile driven by David Potter which produced a shotgun which, according to Officer Larry Johnson, the appellant acknowledged was his gun. We need not here decide the legitimacy of the two searches and seizures, since the appellant does not claim any possessory interest in either of the automobiles that were searched, and has thus failed to establish that he had a legitimate expectation of privacy in the areas searched. See, *Meeks v. State,* 637 P.2d 1259 (Okl.Cr.1981), and cases cited therein, especially *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

### IV.

■ Next, the appellant argues that the trial court erred in permitting the State to introduce the transcript of the preliminary hearing containing the testimony of Lucinda Ross. Both the appellant and the State agree that the case of *Smith v. State,* 546 P.2d 267 (Okl.Cr.1976), sets forth the proper test to be applied. In *Smith,* supra, we stated:

> [T]he prosecution in seeking to introduce the preliminary hearing transcript must sufficiently prove: (1) The actual unavailability of the witness despite good faith and due diligent efforts to secure the presence of the witness at trial; and, (2) the transcript of the witness' testimony bears sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony. (citations omitted).

Appellant does not allege that the transcript of the testimony lacks sufficient indicia of reliability, but he does allege that the prosecutor failed to exercise the due diligence required by *Smith,* in failing to secure the witness, and that thus, said transcript of the witness Ross should have been excluded.

The record before us reveals that Ross was the girlfriend of co-defendant Ozbun and a friend of Underwood's, and that she testified at the preliminary hearing held in early December, 1979. Subpoenas were issued for her to testify at the first jury trial held in March, 1980, (which ended in a mistrial), and again were issued for the trial which was held in April, 1980. Officer John L. Johnson testified that, although he made numerous attempts, he was unable to serve the subpoenas, as one address was non-existent and at the other he was informed that Ross had moved.

The prosecutor maintained that Ross was a hostile witness and was deliberately avoiding appearing as a witness in the matter; therefore, the preliminary hearing transcript should be used. In an in camera hearing he stated that he had caused to be issued an application for arrest of material

---

1. The record demonstrates the following attempt by the defense attorney to define the term "reasonable doubt" during his voir dire of the jury which immediately preceded the attempt by the prosecutor, of which appellant now complains:

    MR. BURNS: . . . I would like the assurance of all of you that you'll hold the State to that burden that the law imposes on them. They must prove it beyond a reasonable doubt.

It's the highest burden in the law. It doesn't get any higher. It's not preponderance, ma'am, that you are familiar with, and sir, I believe from your civil jurors it's not clear and convincing. It's proof beyond a reasonable doubt, every material allegation that they bring. All of you assure me you'll hold the State to that burden? Ladies and gentlemen, thank you very much. (Tr. 155 & 156).

witness Ross, on January 31, 1980. On January 27, 1980, Ross was arrested in Stanislaus County, California, while in possession of an automobile that had previously been reported stolen in Tulsa. According to a communication with the Sheriff's office in California, she was kept in custody for approximately 16 days and then released after having been advised that she was subpoenaed to testify on March 3, 1980, in the current case. Further, on or about February 20, 1980, counsel for co-defendant Ozbun contacted the prosecutor and gave him a telephone number in California where Ross could be reached. Pursuant to this information the prosecutor personally contacted the witness and informed her of the time of the trial and the necessity of her presence. He made another attempt to contact her personally at a later date but the telephone number was no longer operational and he was unable to communicate with her again. The prosecutor testified that he did not follow the provisions of 22 O.S.1981, § 721, et seq. (Uniform Act to Secure Attendance of Witnesses From Without a State in Criminal Proceedings) because he did not want to grant her immunity from prosecution as he interpreted the act to require.[2]

Appellant maintains that the State's failure to comply with the provisions of the aforementioned Uniform Act constituted a lack of due diligence, and according to *Smith,* requires a reversal of the current case. We do not agree.

In *Smith,* the State admitted that prior to the introduction of the testimony in question the whereabouts of the witness was known; also, the testimony was not cumulative in nature; the record failed to reflect any efforts of the State to persuade the witness to return to Oklahoma, other than services of a defective subpoena; the location of the witness was between 15 to 20 miles from the courthouse; and the witness had never appeared hostile to the State; nor does an attempt to avoid service of the subpoena issued by the State appear to have occurred; and it was stipulated that the provisions of the Uniform Act were not followed; thus, the State was held to have failed to make a good faith diligent effort to provide the witness. The case at bar differs from *Smith,* as follows: the State denied knowing the whereabouts of the witness; the testimony is merely cumulative in nature, as the appellant admitted firing a shotgun at the residence in question; the alleged location of the witness was a great distance away; the witness appeared to be hostile to the State, and it appeared that she had sought to avoid service of the subpoena; although the State did not utilize the Uniform Act, the record reflects that this was not done out of bad faith by the prosecutor, but the prosecutor certainly misinterpreted the Uniform Act, as nothing in it precludes the filing of an information once the witness has been returned to the sister state. See, *Wright v. State,* 500 P.2d 582 (Okl.Cr.1972). While the State's effort did not reach the "pinnacle of investigatory inquiry," it was clearly not a "last minute, mad-dash effort," and was sufficient to sustain the State's good faith effort. *Grizzle v. State,* 559 P.2d 474 (Okl.Cr.1977). We cannot say that the trial court abused its discretion in allowing the use of the edited preliminary transcript in the instant case. *Dilworth v. State,* 611 P.2d 256 (Okl.Cr. 1980).

### V.

█ In his seventh assignment of error, the appellant argues that the trial court erred by admitting allegedly prejudicial demonstrative evidence to be received. Specifically, he complains of the following: State's exhibits number 1 and 2 which are

---

**2.** The record reveals the following:

MR. BAKER: Now, I prepared out-of-State witness process, and when I came to that portion of it which indicated that the State would have to guarantee her immunity from process, it was my view that I could not make that guarantee, for two reasons. One:

A material witness warrant was outstanding for her with a $50,000 bond. Second: This auto theft case was an active file, which could have been filed had the Police Department investigation reached a conclusion and the case theoretically could still be presented for prosecution. (Tr. 615).

color photographs of the victim's head, which depict the large entrance and exit wounds; exhibits 2A and 26, which were identified as skull fragments and human hair which were recovered from the floor of the house; and, exhibits 33 and 37 through 42 which are photographs of skull fragments which were also found on the floor.

As we stated in *Glidewell v. State,* 626 P.2d 1351 (Okl.Cr.1981):

... [T]he test for admissibility for allegedly gruesome pictures is whether the probative value of the evidence, as it relates to an issue in the case, outweighs the prejudicial effect. *Vierrether v. State,* 583 P.2d 1112 (Okl.Cr.1978); *Clark v. State,* 558 P.2d 674 (Okl.Cr.1977). According to *Oxendine v. State,* 335 P.2d 940 (Okl.Cr.1958), the principal case on admissibility of gruesome pictures, the evidence must be probative with respect to a fact in issue and that value must outweigh the danger of prejudice, in which event the evidence is admissible even it if is gruesome.

In the instant case the appellant admitted firing a shotgun but denied that he had fired a round with a deer slug in it, and the evidence tended to show that co-defendant Ozbun had fired a .22 caliber weapon. The jury was free to convict one defendant and acquit the other; thus, the cause of the victim's demise was extremely relevant and was argued extensively at trial. The photographs were highly probative in this regard and were accordingly properly admitted, as were the skull fragments. This assignment of error is without merit.

## VI.

■ Appellant also complains of the instructions received by the jury. In his fifth assignment of error, the appellant complains of instructions number 15 and 16 [3] concerning circumstantial evidence which were given to the jury over his objection. Appellant argues that the instructions incorrectly stated the law on circumstantial evidence and created an impermissible presumption. We do not agree. We find that the jury instructions complained of fairly represented the law of circumstantial evidence, and were not in conflict with *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). See, *Hawkes v. State,* 644 P.2d 111 (Okl.Cr.1982). Furthermore, an instruction identical to instruction number 16 has been previously upheld by this Court in *Nichols v. State,* 418 P.2d 77 (Okl.Cr.1966), and a review of the record reveals that the appellant's requested instruction number 1, which was denied, is identical to the instruction given except the requested instruction omits the words "in part," in reference to the reliance made by the State upon the circumstantial evidence; thus, the instructions were properly refused.

## VII.

■ Additionally, in his eighth assignment of error, the appellant argues that the

3. Jury Instruction Numbers 15 and 16 read as follows:

INSTRUCTION NO. 15
You have before you in this case two types or classes of evidence, direct and circumstantial. An example of proving a fact by direct evidence would be through the testimony of a witness relating to his knowledge of that fact as gained through one of his senses. Circumstantial evidence, on the other hand, is that type of evidence from which the ultimate fact sought to be proved may be inferred by the jury based on the direct proof of other facts.
  You are instructed that both classes of evidence are proper under the law and may rightfully be considered by you in arriving at a verdict in this case.

INSTRUCTION NO. 16
You are instructed that in this case the State relies in part for a conviction upon circumstantial evidence all of the facts and circumstances must be established to your satisfaction beyond a reasonable doubt and must not only be consistent with the guilt of the defendant, but must also be inconsistent with his innocence. It is not sufficient that the circumstances coincide with, account for, and therefore render probable, the guilt of the accused, but they must exclude to a moral certainty every other reasonable hypothesis.

trial court erred in refusing to give his requested instruction that as a matter of law Lucinda Ross was an accomplice. As we stated in *Nunley v. State,* 601 P.2d 459 (Okl.Cr.1979):

The test used to determine whether a witness is an accomplice is whether he could be indicted for the offense for which the accused is being tried. If the evidence is uncontroverted and it establishes that the witness is an accomplice, the trial judge must so rule as a matter of law and instruct the jury that his testimony requires corroboration. *Allen v. State,* 522 P.2d 243 (Okl.Cr.1974). Likewise, if the undisputed evidence indicates that the connection of the witness with the crime was innocent and lacking in criminal intent, or that he merely had knowledge and therefore is not an accomplice, the trial judge must so rule. However, if evidence is susceptible to alternative findings that the witness is or is not an accomplice, then the issue is a question of fact to be submitted to the jury under proper instruction. *Howard v. State,* 561 P.2d 125 (Okl.Cr.1977). See also, *Fitzgerald v. State,* 85 Okl.Cr. 376, 188 P.2d 396 (1947).

In the instant case the question of whether Ross was an accomplice is susceptible to alternative findings and, thus, the trial court correctly instructed the jury and properly submitted the issue to the jurors for their determination. Further, since Underwood admitted firing a shotgun, Ross' testimony was corroborated, and even if she were determined to be an accomplice, the failure to give the appellant's requested instruction would be harmless error. See, *Gautt v. State,* 551 P.2d 1150 (Okl.Cr.1976), and cases cited therein.

### VIII.

In another assignment of error, the appellant complains of alleged improper comments made by the prosecutor during his closing argument. We have reviewed the complained of comments, (many of which were not objected to at trial and were thus not properly preserved for review on appeal) and, although we do not condone some of the prosecutorial comments, they are such that they do not require reversal or modification. This assignment of error is without merit.

Finding no errors, which require reversal, and in light of the severity of the crime and the relative leniency of the sentence imposed we decline to modify it; thus, the judgment and sentence is AFFIRMED.

CORNISH, J., concurs.

BRETT, J., concurs in results.