**Bobby Kelly OZBUN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–699.**

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1983.

John Street, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan M. McNaughton, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Bobby Kelly Ozbun, was convicted with co-defendant Jake Underwood, of Murder in the Second Degree, in the District Court of Tulsa County, Case No. CRF-79-3327, was sentenced to not less than fifteen (15) nor more than thirty (30) years' imprisonment, and he appeals. For a discussion of the facts, see the companion case of *Underwood v. State,* 659 P.2d 948 (Okl.Cr.1983).

### I.

In his first assignment of error, the appellant argues that the trial court erred in overruling his motion to dismiss because he alleges that double jeopardy had attached in his first trial which ended in a mistrial. Appellant relies upon *Sussman v. District Court of Oklahoma County,* 455 P.2d 724 (Okl.Cr.1969), and complains that the trial jury was unnecessarily discharged. We do not agree.

In *Johnson v. State,* 550 P.2d 984 (Okl.Cr.1976), this Court reiterated the necessary elements for double jeopardy as set forth in *Stough v. State,* 75 Okl.Cr. 62, 128 P.2d 1028 (1942), as follows:

Before jeopardy attaches, each of the following conditions must exist:

First; the defendant must be put upon trial before a court of competent jurisdiction.

Second; the indictment or information against the defendant must be sufficient to sustain a conviction.

Third; the jury must have been impaneled and sworn to try the case.

Fourth; after having been impaneled and sworn, the jury must have been unnecessarily discharged by the court.

Fifth; such discharge of the jury must have been without the consent of the defendant.

Only when these conditions exist can the discharge of the jury constitute jeopardy and operate as an acquittal of the defendant, and he cannot be placed upon trial for the same offense. The appellant's argument must fail because the fourth and fifth of the aforementioned conditions have not been met. A review of the record before us [1] reveals that it was the appellant's trial counsel who initially interrupted the testimony of witness Ralph Youngblood and sought permission to approach the bench; thereafter, counsel for co-defendant Underwood moved for a mistrial. The record is void of any objection by the appellant to the granting of the mistrial. The trial judge's finding that the appellant's counsel's request to approach the bench was the prelude for the motion for mistrial and that the appellant acquiesced in said motion is amply supported by the record. We cannot say that the trial court abused its discretion in determining that a very cogent and compelling reason existed that created the manifest necessity to declare a mistrial. Com-

---

1. The record before us reveals the following:
   BY MR. BURNS:
   Q. You didn't testify just a couple of minutes ago that your wife was angry:
   WITNESS YOUNGBLOOD:
   A. I can't testify to anybody else's feelings, just like I can't testify about two ex-cons running around with shotguns.
   MR. STREET:
   May we approach the Bench?
   (Whereupon, the following discussion was held at the Bench outside the hearing of the jury panel:)

   MR. BURNS:
   I move for a mistrial. This was not responsive to my question. This thing has to end right now.
   THE COURT:
   I think you're probably right; don't you?
   MR. BAKER:
   Well, the witness didn't specify which two ex-convicts he was talking about. (Tr. 3/5/80 pp. 58 and 59)
   Thereafter, an in camera hearing was held and the motion for a mistrial was granted).

pare, *Hutchens v. District Court of Potta-watomie County,* 423 P.2d 474 (Okl.Cr.1967).

## II.

■ As his second assignment of error, Ozbun argues that the trial court erred in allowing the admission of evidence of alleged "other crimes" on two instances, in violation of *Burks v. State,* 594 P.2d 771 (1979).

In the first instance, the appellant complains of the prosecutor informing the jury during his opening statement that the evidence would show that Ozbun had been in possession of a small pistol on several occasions prior to the day the crime was committed. In *Ragland v. State,* 404 P.2d 84 (Okl.Cr.1965), this Court held: "The office or purpose of an opening statement is to advise the jury concerning the questions of fact involved, so as to prepare their minds for the evidence to be heard. The opening statement is not evidence...." The trial court properly admonished the jury prior to the opening statement as follows:

> The opening statement is not evidence. It is an outline or guide of the evidence. It's to assist you in correlating the evidence with the issues in the case. What they say is a guide to help you understand what will be presented to you hopefully by counsel, but what the lawyer says in the opening statement is not evidence in and of itself.

The comment by the prosecutor in his opening statement was not the type of evidence of other crimes as prohibited by *Burks,* supra, and the evidence was not admitted in the State's case in chief.

2. The affidavit is as follows:
Affiant states that there is probable cause for the issuance of a search warrant because, affiant received information from an Alva White, 1717 E. Latimer Ct., that the informant saw a light colored Pinto drive by the scene of the homicide, heard shots, and saw vehicle leave the scene at a high rate of speed. Affiant also received information from a Gerald A. Dickson, 1734 E. Latimer Ct., that at the time of the homicide the informant saw flashes from a light colored compact automobile and heard loud noises from the auto similar to backfire. During

Secondly, the appellant's allegation that testimony of witness Mary Harris, that a pistol was fired in a bar in which she was working and that the customer who fired the gun placed it in Ozbun's pocket, is also not the type of evidence of "other crimes" that *Burks,* specifically prohibited. In this case there is only an implication of another crime that was obvious only to defense counsel. *Agee v. State,* 562 P.2d 913 (Okl. Cr.1977). This assignment of error is without merit.

## III.

In his third assignment of error, the appellant contends that the affidavit supporting a search warrant for his car was insufficient, and thus the two .22 caliber shell casings that were found therein should have been suppressed. We disagree.

■ The affidavit for search warrant[2] signed by Officer A.L. Alexander of the Tulsa Police Department stated that he had received information from three (3) independent sources which led him to believe that items used in the crime were present in the automobile. In *Bollinger v. State,* 556 P.2d 1035 (Okl.Cr.1976), this Court, quoting from *United States v. Lucarz,* 430 F.2d 1051 (9th Cir.1970), stated:

> The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation ... but on the type of crime, the nature of the missing items,

affiants investigation, affiant saw a statement made by Erbie Alene Webb in which she stated that she was in the above described automobile when the shots were fired at 1735 E. Latimer Ct. Ms. Webb stated that Bobby Osborn is the owner of the above automobile. Affiant was able to confirm that the above named defendant does own the above described automobile. Ms. Webb also stated that the (sic) did not see anyone remove the guns from the auto after the shooting.
Further affiant saith not.

the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property.

Additionally, in *Bollinger,* supra, we said: "It is noteworthy that affidavits for search warrants are to be tested in light of common sense and reality. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)." Based upon the totality of the circumstances, we are of the opinion that the magistrate had probable cause to believe that the items sought would still be in the automobile. See also, *Bishop v. State,* 605 P.2d 260 (Okl.Cr.1979). This assignment is without merit.

## IV.

■ Next, in his fourth assignment of error, the appellant argues that it was error for the transcript of the preliminary hearing testimony of witness Lucinda Ross to be admitted at trial. This issue has been dealt with extensively in the companion case, *Underwood,* supra, and for the reasons stated therein, this assignment of error is without merit.

## V.

■ As his fifth assignment of error, Ozbun alleges the trial court erred in failing to give a requested qualifying admonition to the jury that impeachment testimony of witness Ross could not be used as substantive evidence. The only citation of authority relied upon by the appellant merely distinguishes impeachment from substantive evidence, he cites no authority to support his proposition that an admonishment was required under the facts presented. The record reveals that the trial judge thoroughly examined the proffered transcript of Ross' testimony with counsel for both defendants and the State participating in an in camera hearing, and that a large amount of testimony was struck by mutual accord. A very limited amount of testimony was classified as impeachment by the defense, but was admitted by the trial judge after he found that said testimony was not impeachment but was asked for recollection purposes.

As this Court has stated on numerous occasions: "Admissibility of evidence is within the court's discretion and will not be reversed on appeal without a showing of severe prejudice or a breach of defendant's fundamental rights." *Mills v. State,* 594 P.2d 374 (Okl.Cr.1979); *Rose v. State,* 509 P.2d 1368 (Okl.Cr.1973). Further, and as we have repeatedly held:

> [A]n appellant must support his allegations of error by both argument and citations of authority; where this is not done, and it is apparent that appellant has not been deprived of any fundamental rights, this court will not search the books for authorities to support mere assertions that the trial court erred.

See, *Perez v. State,* 614 P.2d 1112 (Okl.Cr. 1980), and cases cited therein. This assignment of error is without merit.

## VI.

■ Next, Ozbun maintains that the evidence was wholly insufficient to support his conviction, and that the State relied upon the uncorroborated testimony of an accomplice, Lucinda Ross. When confronted on appeal with an argument alleging the insufficiency of the evidence, this Court has repeatedly held that the test is whether a prima facie case has been established, and as long as that test is satisfied, fact questions are for the trier of fact to determine. *Hunt v. State,* 601 P.2d 464 (Okl.Cr.1979). In our determination, we view the entire record in the light most favorable to the State. *U.S. v. Peters,* 625 F.2d 366 (10th Cir.1980); *Renfro v. State,* 607 P.2d 703 (Okl.Cr.1980). The question of whether or not Ross was an accomplice was properly instructed upon and submitted to the jury. See, *Underwood,* supra. Further, the evidence in this case, which is more fully discussed in *Underwood,* supra, when viewed in the light most favorable to the State amply supports the verdict of the jury.

## VII. & VIII.

In his two final assignments of error, Ozbun argues that the Court erred in failing to give his requested instruction number 10, that Ross was, as a matter of law, an accomplice, and that the prosecutor's closing argument was improper. Both of these assignments were raised by co-defendant Underwood, and as we determined the assignments to be without merit in the aforementioned appeal, we likewise find the appellant's assignments herein to be lacking in merit.

Finding no errors which require reversal, and in light of the severity of the crime and the relative leniency of the sentence imposed we decline to modify it; thus, the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.