Lagretta Mae MAXWELL, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–425.

Court of Criminal Appeals of Oklahoma.

Sept. 15, 1987.

Rehearing Denied Oct. 8, 1987.

Larry K. Lenora, Chandler, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Lagretta Mae Maxwell, was tried by jury in Lincoln County District Court, Case No. CRF–82–113, and convicted of First Degree Murder, in violation of 21 O.S.1981, § 701.7, before the Honorable Lloyd H. Henry, District Judge. The jury returned a verdict of guilty and set punishment at life imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

The body of Lincoln County resident Roy Maxwell was found during the evening of July 20, 1982, on a section line road one mile east and two miles south of the highway 62–177 intersection. The body, virtually engulfed in lush vegetation, was found approximately ten (10) feet from the road, near a bridge. The victim died of skull fractures and brain injuries caused by blows to the head. He had also been

stabbed several times in the head, neck and left ear. These injuries were the sole cause of death, although a spent 12–guage shotgun shell was found forty-two feet from the body.

On August 20, 1982, Greg Campbell and Kenneth Nuckols confessed to the murder and implicated appellant's 19–year-old daughter Triphina Bouy and Bouy's boyfriend, Ronald "Boe" Arnold in the murder conspiracy. Arnold and Bouy repeatedly denied involvement. On June 22, 1983, Bouy made a statement implicating Arnold in another crime. Arnold eventually admitted his guilt in the other crime and indicated that Bouy was involved in Maxwell's death.

Arnold, who was granted immunity, testified that approximately six weeks before the murder, appellant approached him about "knock[ing] her old man off," and said she would pay between $1,100 and $1,500 for the murder, and would give Arnold the victim's truck. Arnold contacted Campbell approximately one week after the proposition was aired. Approximately one week after that, Arnold met with Campbell and Nuckols to discuss the murder. Some time later, before the murder, appellant gave Arnold two guns as partial payment for the murder. Included was a 12–guage shotgun.

The night before the murder, Campbell and Nuckols met with Arnold at his apartment to plan the murder. Campbell stated that the murder was to be performed the next day. Arnold drew a map of the victim's home and the immediate area for the two; then he, Campbell, Nuckols and Bouy drove to the Maxwell house, where Bouy left the group. Arnold told the pair where to park the victim's pickup. He also told them where to perform the murder. Campbell and Nuckols left Arnold's apartment, taking Maxwell's shotgun with them.

Following the murder, the pair returned to Arnold's apartment and presented him with the victim's driver's license and wallet. One of the murderers mentioned that the shotgun had discharged near the murder scene approximately one-half hour before the victim was killed. Appellant arrived at the apartment, and Arnold showed her the wallet and driver's license. Appellant seemed shaken and left with her daughter, but not before giving him $100 as partial payment for the murder. Approximately one week later, Arnold and Bouy met appellant in Meeker, where appellant procured $800 from an automatic teller machine across the street from a drive-in restaurant to pay off Campbell and Nuckols. She gave Arnold the money at the drive-in. Appellant told Arnold he would receive two acres of land for his help in the crime.

Triphina Bouy, also given immunity, testified that appellant in June 1982 first asked her about Arnold's criminal record and whether he would dispose of her husband, and Bouy approached Arnold with the proposition. She testified she assisted in the murder by aiding in informing the murderers what kind of vehicle the victim drove and the victim's routine. She said she went to visit her mother the afternoon of the murder. Appellant called the Meeker police in the afternoon, disguising her voice. She later called Tinker Air Force Base, where her husband worked. Bouy called a local store where the victim, who rode to work in a carpool, regularly parked his pickup. These calls were made in an attempt to conceal the crime, Bouy testified. Appellant called the Lincoln County Sheriff's Office sometime after 5:00 p.m. to report the victim as missing. The victim usually returned from work at approximately 4:30 p.m.. The two women traveled up and down the road where the murder occurred to feign a search.

Appellant, in an interview with Agent Frank Brady of the Oklahoma State Bureau of Investigation approximately three weeks after the murder, said she had believed that the victim had a $10,000 life insurance policy, but discovered after his death that the policy was valued at $50,000. Interviews with Campbell and Nuckols revealed no direct link between the murderers and appellant.

Appellant's niece testified that she was with appellant approximately one week after the murder, and appellant went into

what she later identified as a mini-bank. The niece did not see appellant with any money, and did not see any exchange of money between appellant and Arnold.

An employee of the Tinker Credit Union testified that two withdrawals of $400 each had been made from appellant's joint account on July 28, 1982, eight days after the murder. Two days earlier, $2,000 had been transferred from a joint account to an individual account in appellant's name.

Defense witnesses included Nat Bettis, Meeker chief of police at the time of the murder, who testified that his office had received a call at approximately 3:30 p.m. on July 20, 1982, informing them there might be a body in the vicinity of the murder scene. He and an officer of the sheriff's department investigated the area and found nothing. He returned to the scene at approximately 6:35 p.m. that same day after the body was discovered. He testified the body was well obscured.

Appellant testified that she gave Arnold a shotgun in mid-June of that year to sell. She received $200 for the weapon. She said she used the money to buy her granddaughter a present for her first birthday. She related events that occurred earlier the day of the murder and said her daughter Triphina Bouy was with her part of the day. The victim usually arrived home at approximately 4:30 p.m.. When he did not arrive, she telephoned Tinker at approximately 5:00 p.m. and was told the victim never arrived for work. She made a couple of other calls, including one to the Lincoln County Sheriff's Office at 5:55 p.m.. Shortly thereafter, she and Bouy drove along the road near their home to search for the victim. On the return trip, she spotted a white shirt in the vegetation which she immediately recognized as her husband's. She did not recall seeing any portion of the body. Without stopping to investigate, she returned to the house and notified the sheriff's office at 6:16 that she had found the body. She withdrew $800 to use for spending money, fearing the bank account would be frozen while her husband's estate was settled.

Appellant's main arguments center around the lack of corroborative evidence needed to support the testimony of Arnold and Bouy. Specifically, she contends that the trial court erred in refusing to instruct the jury that Bouy and Arnold were accomplices as a matter of law; that there was insufficient evidence to corroborate their testimony and that therefore the evidence was insufficient to convict her. We shall address these together.

 If the evidence is uncontroverted and establishes that the witness was an accomplice, the trial judge must so rule as a matter of law and instruct the jury that corroborative evidence is necessary. *Nunley v. State*, 601 P.2d 459, 462 (Okl.Cr. 1979). However, an error to so instruct does not require reversal if sufficient independent evidence exists to corroborate the testimony. *Allen v. State*, 522 P.2d 243, 245 (Okl.Cr.1974). We believe sufficient corroborative evidence exists here. Arnold testified that he received two weapons, including a 12-guage shotgun from appellant to be used for payment to Campbell and Nuckols, the men who actually performed the murder. He testified that, instead of selling it and giving the murderers cash, he gave them the guns. After the murder, Campbell related to him that the gun had discharged near the murder scene shortly before the victim arrived. A law enforcement official testified that a spent shotgun shell was found approximately 42 feet from the body. Arnold also testified that he had received $800 from appellant approximately one week after the murder. The money was to pay off the murderers. A niece testified that she was with appellant approximately one week after the murder and remembers appellant going into what was identified as a mini-bank containing an automatic teller machine. A bank employee testified that appellant made withdrawals of $800 from her account eight days after the murder. Additionally, there is the testimony presented on behalf of appellant herself. A call was made to the Meeker Police Department that roughly coincides with the time Bouy testified appellant made such a call. The police chief testified he responded to the call, but could not find

a body, in part because of thick vegetation. Appellant herself said she did not see a body, but knew it was there because she recognized her husband's white shirt. Rather than stopping to investigate, she proceeded directly to the house and notified authorities she had found the body. The question of whether accomplice testimony is sufficiently corroborated can be determined by all the evidence in the case, including the defendant's testimony; it need not be limited to the State's case in chief. *Wampler v. State*, 553 P.2d 198, 203 (Okl. Cr.1976). We find sufficient independent corroborative evidence here to support the jury's verdict.

■ Appellant also argues that the instructions governing corroborative evidence were inadequate. She admits that the instructions are standard Oklahoma Uniform Jury Instructions, but contends they were inadequate in her case. Instructions to be given are within the discretion of the trial court, and this Court will not interfere when the instructions, taken as a whole, fairly reflect the applicable law. *Hayden v. State*, 713 P.2d 595, 596 (Okl.Cr. 1986). We find that the instructions given fairly reflect the applicable law. The jury was instructed that, should it find both Bouy and Arnold to be accomplices, sufficient independent corroborative evidence must support that testimony. The jury was told it could eliminate the accomplice testimony entirely, then examine all the remaining evidence and circumstances to see if that evidence tended to connect the defendant with the crime that had been committed. If such were the case, the accomplice testimony was sufficiently corroborated.

■ Even if the requested instructions had been given, we see no difference in the outcome. The corroborative evidence may have been insufficient to establish appellant's guilt by itself, but accomplice testimony need not be corroborated in every material aspect. If one material fact is corroborated, the jury can infer that the accomplice speaks the truth for all his testimony. *Jemison v. State*, 633 P.2d 753, 755 (Okl.Cr.1981). Acts of the defendant after

the crime can be used as proof of guilt. *Id.* We believe that the evidence presented did tend to connect the appellant with the crime and not simply the perpetrators. *See Keller v. State*, 651 P.2d 1339, 1342 (Okl. Cr.1982). We therefore hold that, even if the trial court erred in failing to instruct that Arnold and Bouy were accomplices as a matter of law, sufficient corroborative evidence existed and instructions governing that evidence sufficiently stated the applicable law so that the error did not prejudice the defendant. *Ozbun v. State*, 659 P.2d 954, 958 (Okl.Cr.1983).

■ Having held that there was sufficient evidence to corroborate the accomplice testimony, appellant's argument that the jury's verdict was contrary to law and not supported by the evidence must also fail. The reviewing court must examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985). In so doing, we must accept all reasonable inferences and credibility choices that tend to support the decision of the trier of fact. *See Washington v. State*, 729 P.2d 509, 510 (Okl.Cr.1986). A rational trier of fact could convict appellant based on this evidence. These assignments of error are therefore without merit.

■ Appellant also claims that the trial court erred in overruling her motion for continuance. Appellant claims that daughter Triphina, in an unsworn June 1983 statement, recanted earlier testimony in which she denied appellant's involvement in the crime. Appellant claims she did not discover this until September 22, and did not have time to prepare for the change before trial started on October 11. Appellant admits that it is at the discretion of the trial court whether to grant a continuance, and that this Court will not overturn such a ruling absent an abuse of this discretion. *Henegar v. State*, 700 P.2d 659, 660 (Okl. Cr.1985). We see no abuse of that discretion here. Bouy's story essentially echoed Arnold's, a story for which appellant had

over a year to prepare. Appellant's attorney had three weeks to prepare for Bouy's testimony, and the record reflects that the attorney did an excellent job of cross-examining Bouy. Appellant can hardly claim she was surprised at trial. There was simply no suppression of favorable evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This assignment of error is therefore meritless.

Appellant next claims that the trial court erred in excluding as evidence certain letters written by Arnold while in jail. Appellant claims that the letters would show that Arnold received special treatment during his incarceration in exchange for his testimony against appellant. The admission of evidence is within the sound discretion of the trial court. *Behrens v. State,* 699 P.2d 156, 158 (Okl.Cr.1985). The same is true concerning the relevancy and materiality of evidence. *Owens v. State,* 665 P.2d 832, 835 (Okl.Cr.1983). We see no abuse of that discretion here. The letters related instances where Arnold was allegedly allowed sexual contact with Bouy while in jail, and instances where the two supposedly discussed the case. Such evidence would not be relevant to whether the appellant participated in the murder of her husband. *See* 12 O.S.1981, §§ 2401, 2402. In any event, appellant's attorney was allowed to use the contents of the letters to impeach the witness, and the record indicates he used them effectively. Thus, appellant can show no prejudice by the trial court's refusing to allow the jury to actually examine the letters. *Ozbun, supra.* This assignment of error is without merit.

Appellant also alleges that the trial court erred in overruling appellant's motion for a mistrial. When Triphina Bouy took the stand, she was questioned about her involvement in the murder. She stood on her Fifth Amendment right to remain silent. At that point, in front of the jury, the prosecutor moved by written application for an order of immunity. The following conversation then took place:

THE COURT: Have you consulted with legal counsel, a lawyer?

A. Over this? No, sir.

THE COURT: the district attorney purposes [sic] to grant you immunity of prosecution concerning the homicide of Roy Durl Maxwell. In return for this, for your truthful testimony, he agrees not to prosecute you. You agree to give truthful testimony in all cases filed against any and all persons involved in the planning or the commission of the homicide of Roy Durl Maxwell. Do you understand that?

A. Yes, sir.

. . . .

THE COURT: Do you understand that if it later turns out that you do not give truthful testimony, that then this would be a violation of this agreement?

A. Yes, sir.

THE COURT: And you would be subject to whatever the pains and penalties are?

A. Yes, sir.

After this exchange, appellant objected and moved for a mistrial. Appellant claims that the trial court's comments in telling Bouy that she must testify truthfully or face penalties placed undue influence on her testimony, and that the jury would be compelled to believe her because the judge stressed she must tell the truth. We are not convinced. While the trial court noted, and we agree, that the better course would have been to conduct the procedure out of the presence of the jury, failure to do so in this case was not error *per se. See Namet v. United States,* 373 U.S. 179, 186, 83 S.Ct. 1151, 1154–55, 10 L.Ed.2d 278 (1963). Further, there is no prejudice against the defendant here. The trial court gave the standard written instruction that in making rulings governing the admissibility of evidence, he in no way intimated that such evidence or testimony should be given any additional weight or credit. In the circumstances of this case, the trial court's admonition to the witness could as easily be construed as stressing the witness' propensity to lie. Having failed to demonstrate that she was prejudiced by the exchange, appellant's contention is without merit. *Harrall v. State,* 674 P.2d 581, 583 (Okl.Cr. 1984). While appellant has failed to estab-

lish prejudice, we note that prosecutors would be well advised to follow Section 3–5.7(c) of *The ABA Standards for Criminal Justice, The Prosecution Function,* (1980), which reads:

> A prosecutor should not call a witness who the prosecutor knows will claim a valid privilege not to testify for the purpose of impressing upon the jury the fact of the claim of privilege. In some instances, as defined in codes of professional responsibility, doing so will constitute unprofessional conduct.

Finally, appellant claims that the trial court erred in failing to grant her motion for a new trial based on newly discovered evidence. Appellant produced two affidavits from a fellow inmate of Arnold to the effect that the victim was supposed to be scared into giving appellant a divorce, not killed. This Court has held that to justify the granting of a new trial on the basis of newly discovered evidence, it cannot be cumulative in nature and there must be a reasonable possibility that had the evidence been introduced at the trial, the result would have been different. *Smith v. State,* 590 P.2d 687, 689 (Okl.Cr. 1979). After reviewing the evidence in its entirety, we are convinced that the result would have been the same. This proposition is without merit.

Having reviewed all assignments of error and finding them without merit, appellant's conviction is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.