Chester Lee VAUGHN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–83–317.

Court of Criminal Appeals of Oklahoma.

March 8, 1985.

E. Alvin Schay, Appellate Public Defender, Robert M. Beck, Sp. Counsel, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Chester Lee Vaughn, was convicted in Love County District Court,

Case No. CRF–82–31, of Kidnapping, First Degree Rape, and Sodomy, Crime Against Nature, was sentenced to ninety-nine (99) years' imprisonment for each offense, to run consecutively, and he appeals.

In Marietta, Oklahoma, during the early evening hours of July 17, 1982, S.H., a ten (10) year old girl, was approached by a man driving an automobile while she was riding her bicycle not far from her home. S.H. testified that the man, whom she positively identified in court as the appellant, offered her one dollar if she would show him where Seventh Street was located. At approximately 7:07 p.m., Barbara Harrison, then conversing with her sister Kathy Simpler on West Creek Street in Marietta, witnessed S.H. riding her bicycle with an automobile following closely behind. Harrison related that when S.H. stopped, the automobile pulled over to the side of the road and the driver, whom Harrison also positively identified in court as the appellant, opened the door to the vehicle. Harrison then witnessed the appellant grab S.H. by the waist and throw her into his vehicle head first. As the vehicle then sped toward her, Harrison stepped into the street in an attempt to stop it, but was forced to jump out of the way. She yelled to S.H., asking her, "Is that your daddy?", and S.H. screamed, "Oh my God, help me" as the vehicle sped away. Harrison was able to remember the first three digits of the Iowa license plate. After unsuccessfully trying to call the police and to follow the appellant's vehicle, Harrison and her sister went personally to the police station and reported the incident.

Testifying in substantially the same manner, S.H. related that when she got close to the appellant's vehicle he got out and pushed her off her bicycle and into the vehicle. S.H. further testified that the appellant waved a pair of pliers at her, threatening her with physical bodily harm if she did not lie down on the vehicle's floor boards out of sight. She also testified that the appellant informed her that he was going to have sexual intercourse with her. Vaughn then proceeded to drive down a country road, where S.H. related she was raped by and forced to perform oral sodomy on Vaughn. S.H. was then told to get dressed and was left by the side of the road; the appellant was arrested shortly thereafter. A search of his vehicle a few days later, pursuant to a warrant, yielded a pair of pliers which were photographically identified by S.H. as those which were used to threaten her.

## I.

In one of his assignments of error, Vaughn argues that the trial court improperly denied his motion for a change of venue. Vaughn's motion was accompanied by three affidavits and several newspaper articles published in the Daily Ardmoreite and the Marietta Monitor to show that unfavorable pretrial publicity prevented him from receiving a fair and impartial trial. The motion, to which one witness testified, was overruled at a hearing on September 10, 1982, as indicated by a court minute in the oral record. An examination of both the oral record and the trial transcript does not reveal the trial court's reasons for denying the motion, thus, we are unable to determine whether the trial court abused it's discretion in so doing. However, we do find from the record that there had been extensive voir dire examination to determine the prejudicial effect of the pre-trial publicity. All of the jurors who sat on the final jury panel indicated either that they would be able to render a verdict based solely upon the evidence presented at trial and that they would disregard any pre-trial publicity which they were exposed to, or that they had no fixed opinion of the appellant's guilt or innocence. Accordingly, we are of the opinion that a change of venue was not warranted in the instant case. See, *Rushing v. State*, 676 P.2d 842 (Okl. Cr.1984) and cases cited therein.

## II.

Vaughn also alleges in another assignment of error that the information charging him with Rape in the First Degree failed to state that he was over eigh-

teen (18) years of age and it was therefore defective. In particular, he argues that 21 O.S.1981, §§ 1111 and 1114 require that one accused of Rape in the First Degree be proven to have been eighteen (18) years of age at the time of the alleged offense, this is not the law in Oklahoma. We have consistently held that in a prosecution charging the crime of Rape in the First Degree, the accused must establish as an affirmative defense that he is not of the statutory age. *Driver v. State*, 634 P.2d 760 (Okl.Cr.1981). After a careful review of the record now before us, we find that Vaughn made no attempt to raise this defense at his trial nor did he specifically allege this assignment of error in his motion for a new trial. Thus, he has not properly preserved this assignment of error for appellate review. See also, *McDuffie v. State*, 651 P.2d 1055 (Okl.Cr.1982).

■ Moreover, this assignment of error is patently frivolous in light of Sheriff Marvin Wade's testimony that at the time of the offense the appellant was thirty-two (32), as shown by an examination of Vaughn's driver's license.

### III.

■ In his next assignment of error, Vaughn complains that the State failed to establish two essential elements of First Degree Rape under 21 O.S.1981, §§ 1111 and 1114. He claims that the testimony of the victim, S.H., and her examining physician failed to establish that he achieved penetration. This allegation is frivolous in light of the victim's specific testimony at trial; and the examining physician's testimony that he found her hymen was torn and bleeding shortly after the incident. Further, expert testimony established that the victim suffered no bruising in her pelvic area, which indicated that her torn hy-

men was not the result of being pushed off her bicycle or receiving a blow to the area. See, *Wallace v. State*, 620 P.2d 410 (Okl.Cr. 1980). As any penetration, however slight, is sufficient to constitute rape, *Swearingen v. State*, 31 Okl.Cr. 66, 237 P. 135 (1925), we are of the opinion that there was ample evidence in the case at bar to establish penetration.

■ Vaughn also argues that the verdict is not supported by the evidence because there was no proof that the victim was not his wife. We find this argument to be patently frivolous. S.H. was only ten (10) years old when assaulted by the appellant. She testified that she had never seen Vaughn before the criminal act took place; her mother testified that she had never known Vaughn, nor had she given him permission to take her daughter anywhere. The evidence was more than sufficient to establish that no marriage relationship existed between the victim and Vaughn. See, *Wallace v. State*, supra.

### IV.

Vaughn complains in another assignment of error that the prosecutor improperly attempted to define the phrase "reasonable doubt" to the jury during voir dire. Particularly, he argues that by comparing the concept of reasonable doubt to a "teeter-totter", the jury was left with the erroneous impression during the remainder of voir dire and throughout trial that the presumption of his innocence "teetered" to a presumption of guilt once the prosecutor presented any evidence to establish that the crimes had been committed by him, thereby imperissibly shifting the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[1]

1. MR. HIGHSMITH: Now, the State has to prove its case. The burden of proof is beyond a reasonable doubt. I imagine that before this is over, you'll hear that word probably 100 times, that phrase, "beyond a reasonable doubt." It's not beyond any doubt. I doubt I could prove beyond any doubt that the sun will rise tomorrow morning. I want you to hold the State to

the burden of proof, but only to that burden of proof. Can you agree to that?

(Each of the Jurors nodded his assent.)

MR. HIGHSMITH: The purpose of voir dire and a rough translation of the latin words, "voir dire," means to speak the truth. The whole idea of this process we're going through right now is to try to pick people that are going to be fair.

■ A review of the record reveals that Vaughn objected to the complained of comments but failed to request the trial court to admonish the jury. We have held in *Fiorot v. State*, 641 P.2d 551 (Okl.Cr.1982), that total failure of the accused to request the jury be admonished to disregard prosecutorial comments results in a waiver of alleged errors. Vaughn has therefore not properly preserved this error for appellate review.

■ Further, while we agree that it is error for the prosecutor to define the phrase "reasonable doubt", we are not convinced that his statements in the instant case regarding "reasonable doubt" were an attempt to define the phrase, nor did they create an erroneous impression. *Johnson v. State*, 632 P.2d 1231 (Okl.Cr.1981). See also, *Wacoche v. State*, 644 P.2d 568 (Okl. Cr.1982).

■ The appellant additionally complains in this assignment of error that the prosecutor improperly attempted to appeal to the passions and prejudices of the jury by commenting during his closing argument to-wit:

If you think by virtue of the evidence and the crimes this man has committed, that he deserves a sentence that is at least as long as the memory that [the] ten-year old girl will carry with her, then by all means give it to him." (Tr. 328)

Vaughn, however, did not object to this remark; any objections on appeal are therefore waived. See, *Tahdooahnippah v. State*, 610 P.2d 808 (Okl.Cr.1980), and cases cited therein.

■ Furthermore, even if this error had been properly preserved, we find that the complained of comment was not so prejudicial as to have affected the jury's verdict in light of the overwhelming evidence against Vaughn and the nature of his crimes.

*Campbell v. State*, 636 P.2d 352 (Okl.Cr. 1981). Accordingly, this assignment of error is without merit.

**V.**

■ Vaughn alleges in his next assignment of error that the trial court improperly failed to instruct the jury on the lesser included offenses of Attempted Rape, Assault and Battery, Child Beating, Child Stealing and Lewd Molestation. We note from the record that the appellant did not object to the trial court's failure to give such instructions nor did he request such instructions during trial, thus, he has waived his right to assert these issues on appeal. *Jetton v. State*, 632 P.2d 432 (Okl. Cr.1981).

■ Moreover, had Vaughn properly preserved this assignment of error for appeal, we find it to be wholly without merit. In the case at bar, there is more than ample evidence demonstrating that Vaughn did successfully rape the victim in the first degree. There is, however, no evidence in the record before us to support lesser included offenses. Additionally, Vaughn argues as his defense that he is innocent of all the crimes that he was charged with, thus, any instructions concerning lesser included offenses were properly not given. See, *Campbell v. State*, 640 P.2d 1364 (Okl.Cr.1982). See also, *Wade v. State*, 556 P.2d 275 (Okl.Cr.1976).

**VI.**

■ In another assignment of error, Vaughn asserts that the trial court improperly denied his request to permit Debora Denham, his former wife, to testify during the sentencing stage of his bifurcated trial as to his good character in mitigation of his punishment. The record reveals that Denham was allowed to testify that she had

That's the whole idea of having the jury in the jury trial system in this country, is to try to be fair, to get the people in the community to make a decision. That's all we're trying to do.

You start like a little teeter-totter with a balance in the middle and let it be tilted one way or the other by the evidence in a case.

The defendant over here is entitled to that. I don't think anybody has any questions about that. (TR. 27, 28).

never observed any sexual mosconduct by the appellant; that in her opinion, Vaughn had no tendency to engage in sexual misconduct and that he was a loving father towards his children. Upon objection by the prosecutor toward her continued testimony, defense counsel made an offer or proof to the trial judge in which he would purportedly show that Vaughn was incapable of committing the crimes of which the jury found him guilty. As Vaughn had already been found guilty as charged by the jury, the trial court properly limited the evidence presented to the jury during the sentencing stage of trial to the issue of his punishment. *Johnston v. State,* 673 P.2d 844 (Okl.Cr.1983).

Vaughn additionally complains in this assignment of error that the trial court improperly allowed the prosecutor to cross-examine Denham, over defense counsel's objection, by asking her about a prior inconsistent statement she allegedly made concerning his character.[2] As Denham had previously testified to Vaughn's good character, the door was opened to the State's cross-examination on these issues. *Wacoche v. State,* supra. The trial court, therefore, properly overruled defense counsel's objection. Accordingly, this assignment of error is without merit.

### VII.

In his final assignment of error, Vaughn argues that cumulative error in the instant case justifies reversal of his conviction or modification of his sentences. This Court has consistantly held that where there is no individual error, there can be no error by accumulation. *Thornton v. State,* 668 P.2d 344 (Okl.Cr.1983). Accordingly, this assignment of error is without merit.

2. The record reveals the following colloquy:

Q (By Mr. Highsmith) Do you recall a conversation with Mr. Magruder—
A Yes, sir.
Q —following the arrest of Mr. Vaughn?
A Yes, sir.
Q And Mr. Magruder is the district investigator for the district attorney's office here; is that correct?
A Yes, sir.

For the foregoing reasons, the judgments and sentences are hereby AFFIRMED.

PARKS and BRETT, JJ., concur.

Q Did you not at that time tell him that you had been expecting something like this and had suspected him of misconduct with other kids?
A I never said I suspected him of misconduct with other kids.
Q And did you then tell him that he had a friend that you knew that had suspected him of misconduct with other kids?
A No, sir. What I said was that a friend of Mr. Vaughn's had told me that she suspected it.
MR. HIGHSMITH: That's all. (TR. 318, 319).