**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

ROMAN PETE WANSING,

        Petitioner-Appellant,

v.

No. 01-7163

STEVE HARGETT, Warden; STATE
OF OKLAHOMA,

        Respondents-Appellees.

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA
### (D.C. NO. 99-CV-645-P)

Roman Pete Wansing filed a pro se brief.

Madeline S. Cohen, Assistant Federal Public Defender (Michael G. Katz, Federal
Public Defender, and James P. Moran, Assistant Federal Public Defender, with
her on the briefs), Denver, Colorado, for Petitioner-Appellant.

Patrick T. Crawley, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General of Oklahoma, with him on the brief), Oklahoma City, Oklahoma, for
Respondents-Appellees.

Before **TACHA** , Chief Judge,  **McWILLIAMS** , and **McCONNELL** , Circuit
Judges.

**McCONNELL** , Circuit Judge.

In the final scene of *The Philadelphia Story*, the late Katherine Hepburn faces a room packed with wedding guests and calls off her impending marriage to a man she has come to despise. She begins hesitantly and apologetically, showing just how mortifying the experience must be, but gains in confidence as she speaks – perhaps emboldened by the knowledge that a debonair Cary Grant and an earthy Jimmy Stewart are waiting in the wings as possible replacements for the rejected groom. The question in this case is whether the degree of certitude required to cancel a wedding at the last minute provides so flawed an analogy to the degree of certitude required to convict a defendant of manslaughter that a verdict rendered by a jury under the influence of such an analogy must be overturned on habeas review.

## I. Background

On August 25, 1995, habeas petitioner Roman Pete Wansing, an Oklahoma businessman, shot and killed former employee Tim Johnson. Mr. Johnson had won the affections of Mr. Wansing's ex-girlfriend, Anita Stagner, and obtained control of Mr. Wansing's pallet shop business, which was in Ms. Stagner's name. Mr. Wansing continued to pursue Ms. Stagner, demanding that both she and the shop be returned to him. The feud escalated until the August 25 shooting, after which Mr. Wansing was apprehended and charged with first-degree murder.

According to a prosecution eyewitness, Mr. Wansing pulled into a parking lot less than a minute after Mr. Johnson. The two got out of their cars and engaged in some apparently unheated conversation. Then Mr. Wansing went back to his truck, pulled out a garbage bag concealing an assault rifle, and shot the unsuspecting Mr. Johnson, who was just standing there until he tried at the last minute to duck. According to Mr. Wansing's version of the events, on several occasions Mr. Johnson had assaulted and threatened to kill him, and on the day in question chased him into the parking lot, repeating the threat. Confronted with these conflicting stories, the jury convicted Mr. Wansing of first-degree manslaughter.

This case hinges on the burden of proof applied by the jury in reaching its verdict. Oklahoma law does not allow jury instructions as to the meaning of "reasonable doubt." *See Smallwood v. State*, 907 P.2d 217, 231 (Okla. Crim. App. 1995). During voir dire, one prospective juror complained that he would like more guidance as to the meaning of that standard. In response, the trial judge made the following remarks:

> We do not define reasonable doubt, and it is error to instruct on a definition of reasonable doubt. This is not true in some other jurisdictions. And if you all will accept my caution to you, that I in no way intend to express or imply a definition of reasonable doubt, or beyond reasonable doubt, I'll tell you about an episode that I had when I was a brand new lawyer.
> I was in federal court, representing a guy who was charged with kidnapping. And I heard the federal prosecutor define

-3-

reasonable doubt to the jury. And I checked on that later, and that apparently was permissible at that time, in that federal jurisdiction. And what she said was, reasonable doubt is the kind of serious doubt that causes you to act or not act in matters that are serious, like calling off a wedding at the last minute, after you've walked down the aisle and are waiting on the other party or waiting on the best man, or something like that, all of a sudden just saying, "No, it's all off, I'm not going to get married," and just quitting right there after all the announcements are out and the gifts have been received and everybody's all dressed up and sitting in church, and the minister's looking at you, and all of a sudden you walk out.

And I thought about that later, and I thought some people, if they were considering their future happiness, and the seriousness with which marital vows ought to be taken, would probably, if they had the slightest bit of doubt, stop a wedding. Other persons might think that they were absolutely going to live a life of misery, they've made a terrible, bad decision, and they might drop dead of a heart attack or stroke right there, because they were so nervous about the wedding, and they thought it was a bad idea, but they still wouldn't walk out because of the embarrassment it would cause their mother or their intended, and all the inconvenience and trouble everybody had gone to. And they wouldn't budge. They'd sit right there and get married and say, "Well, if it doesn't work out, I'll get it annulled, or I'll get a divorce or something, but I'm not going to ruin this party." And, so, it didn't matter.

The fact of the matter was, that reasonable doubt is a subjective matter that has to be resolved by each person, and each person in the individuality of his or her own conscience and reason. And furthermore, it's going to vary every case, because every case is different. The facts and the evidence are always different.

So, Oklahoma takes the position that it's wrong to tell you what reasonable doubt is. Only you can decide what is reasonable, in the light and under the circumstances of each individual case. Because, after all, it is your reason that we rely on to decide the evidentiary issues in the case. And, so, who are we to tell you what is reasonable and what is not? That is wholly within your province.

(R., supp. vol. 7, at 41-43.)

Defense counsel immediately moved for a mistrial on the ground that the anecdote misled the jury as to the nature of reasonable doubt. The motion was denied, and after a three-day trial, the jury found the defendant guilty of manslaughter. The jury received no further instructions on the meaning of the reasonable doubt standard.

Petitioner raised his objection to the judge's remarks on appeal to the Oklahoma Court of Criminal Appeals (OCCA), contending that the judge's anecdote about the cancelled wedding misled the jury about the meaning of the reasonable doubt standard, and thus violated his right to a fair trial. By a divided vote, the OCCA affirmed the conviction. *Wansing v. State*, No. F 96-1307, at 1 (Okla. Crim. App. Feb. 25, 1998) (per curiam). The majority rejected Mr. Wansing's claim because it decided that the trial judge's comments did not constitute a definition of reasonable doubt. *Id.* at 2. The dissent objected that there was a real possibility that the jury would take the story as providing a definition: "[A]t the very least [the comments] created confusion in the minds of the jurors. Were the jurors to use their own definition of the term as implied by the jury instructions which did not define the term, or did reasonable doubt really mean that doubt sufficient to abandon a betrothed at the altar?" *Id.* at 5.

After exhausting his state remedies, Mr. Wansing sought a writ of habeas corpus in federal court, on several grounds. The district court denied his request, and this Court granted a certificate of appealability on the issue of whether the judge's remarks violated Mr. Wansing's right to a fair trial, as well as the issue of his competence to stand trial. Petitioner has abandoned the competency claim, leaving only the due process claim before us now. Because we are in the same position with respect to the record as the district court, we review its adjudication of that claim *de novo,* subject to any deference due to the OCCA under 28 U.S.C. § 2254. *See Sallahdin v. Gibson*, 275 F.3d 1211, 1222 (10th Cir. 2002); *Smallwood v. Gibson*, 191 F.3d 1257, 1264 n.1 (10th Cir. 1999).

## II. Section 2254(d) Deference

The Antiterrorism and Effective Death Penalty Act (AEDPA) forbids federal courts from granting habeas relief on any claim "adjudicated on the merits in State court proceedings" unless the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In this case, it is far from clear whether the OCCA actually adjudicated petitioner's federal due process claim on the merits. According to the OCCA's

statement of the case, one of the issues on appeal was the claim that "[t]he trial court deprived Mr. Wansing of a fair trial when he discussed what constituted reasonable doubt." *Wansing*, No. F 96-1307, at 1. The OCCA disposed of this claim as follows:

> The trial court expressly told the jury he was *not* defining reasonable doubt when he discussed an illustrative example of the meaning of the term. We find no reason to go behind the plain meaning of the trial court's words. *See, Vaughn v. State*, 697 P.2d 963, 966 (Okl. Cr. 1985). The [claim in question] does not warrant relief.

*Id.* at 2. Mr. Wansing contends that the OCCA addressed only the issue of whether the trial court "defined" reasonable doubt (which would be error under Oklahoma law) and not the federal due process issue of whether the statement misled the jury regarding the standard of proof.

Appellee (hereinafter "the State") does not explicitly argue in its brief that the OCCA addressed petitioner's federal constitutional claim on the merits. Rather, the State argues:

> The finding by the Oklahoma Court of Criminal Appeals, that the trial judge did not define "reasonable doubt" was a factual finding that is presumed correct in this federal habeas corpus action. Petitioner has wholly failed to overcome this presumption of correctness by any evidence, much less, by clear and convincing evidence. Nevertheless, there being no cases cited that stand for the proposition that the trial court in this case defined "reasonable doubt" the state appellate court's finding in this regard is not contrary to, nor and [sic] unreasonable application of, firmly established federal law as determined by the United States Supreme Court. Similarly, the state appellate court's decision cannot be said to have been based on an unreasonable application of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d)(1).

State Br. 3-4; *see also id.* at 8 (arguing that the OCCA's "finding mooted Petitioner's claim that his federal due process rights were violated by the purported definition").

The State thus characterizes the OCCA's opinion as a "factual finding" that the trial court's wedding story did not constitute a "definition" of reasonable doubt, argues that this factual finding is uncontested and neither contrary to nor an unreasonable application of Supreme Court precedent, and claims that it "mooted" Petitioner's federal constitutional claim. The problem with this argument is that the federal constitutional question does not hinge on whether the trial court's statement did, or did not, amount to a "definition" of the term. The federal constitutional right in question is the right to a "fair trial." *See, e.g.*, *Taylor v. Kentucky*, 436 U.S. 478, 490 (1978) ("[R]efusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment."); *Cupp v. Naughten*, 414 U.S. 141, 145, 147 (1973). The "fact" (even assuming it is a "fact" and not a conclusion of law) that the trial court did not provide a "definition" of reasonable doubt is not inconsistent with the possibility that the jury was misled in a way that made his trial unfair. Beyond that, the State does not contend that the OCCA addressed Petitioner's federal claim on the merits.

-8-

It remains possible, however, that the OCCA discussion of state law constitutes an implicit judgment on the federal issue. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Cook v. McKune*, 323 F.3d 825, 830-31 (10th Cir. 2003). Under Oklahoma law, it is error for a trial court to attempt to define reasonable doubt. *Smallwood*, 907 P.2d at 231; *Summers v. State*, 704 P.2d 91, 92 (Okla. Crim. App. 1985). This is because Oklahoma has determined that such definitions are more likely to confuse than to clarify the standard. *See Romano v. State*, 909 P.2d 92, 124-25 (Okla. Crim. App. 1995); *Smallwood*, 907 P.2d at 231. In *Williams v. State*, 572 P.2d 257, 259 (Okla. Crim. App. 1977), the court explained that "'reasonable doubt' is self-explanatory, and . . . therefore definitions thereof do not clarify the meaning of the phrase, but rather tend to confuse the jury." The underlying purpose of the rule – ensuring that the jury is not misled – thus bears some resemblance to the federal constitutional inquiry.

Oklahoma appellate courts do not apply the "no definition" rule mechanically – reversing if there was a definition and affirming if there was not. Rather, even when the appellate court finds that the judge or prosecutor improperly defined "reasonable doubt" for the jury, it will not reverse the conviction unless it also finds that the definition misled the jury in a way that "prejudiced the rights of the [defendant] or affected the verdict to his detriment." *Johnson v. State*, 632 P.2d 1231, 1233 (Okla. Crim. App. 1981); *accord*,

*Summers*, 704 P.2d at 92; *Jones v. State*, 554 P.2d 830, 835 (Okla. Crim. App. 1976). More significantly, at least in some cases, even when the appellate court has concluded that a discussion of "reasonable doubt" by a trial judge or prosecutor did *not* constitute a "definition," the court has gone on to inquire whether, even so, the discussion created an "erroneous impression," *Vaughn v. State*, 697 P.2d 963, 967 (Okla. Crim. App. 1985), or "prejudiced the rights of the appellant," *Johnson*, 632 P.2d at 1233. No Oklahoma opinion of which we are aware avers that this is required by state law, but it is at least sometimes the practice.

Indeed, the OCCA in this case cited one such decision, *Vaughn*, and *Vaughn* cited another, *Johnson*. It is possible to construe the OCCA's citation to *Vaughn* as indicating that the court implicitly considered, and rejected, the possibility that the trial court's wedding story was unconstitutionally misleading or prejudicial. If so, we would treat that implicit conclusion as "an adjudication on the merits" of Mr. Wansing's fair trial claim, despite its summary character. This conclusion is bolstered by the fact that, as the State noted during oral argument, the OCCA summarized the issue presented as whether "[t]he trial court deprived Mr. Wansing of a fair trial when he discussed what constituted reasonable doubt." *See Mitchell v. Gibson*, 262 F.3d 1036, 1049-50 (10th Cir.

2001) (deferring under § 2254(d) because the state court identified the federal claim even though it explicitly resolved only a related state claim).

In light of our disposition in the next section, it is not essential to parse more carefully whether the OCCA decision constituted an adjudication on the merits. Instead, giving the OCCA decision "the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), we now proceed to the question whether it was an unreasonable application of federal law, as articulated by the Supreme Court, to uphold Mr. Wansing's conviction.

### III. The Merits of the Fair Trial Claim

As the Supreme Court has repeatedly emphasized, "[t]he reasonable-doubt standard plays a vital role in the American scheme of criminal procedure." *In re Winship*, 397 U.S. 358, 363 (1970). Trial courts have considerable latitude in determining how to convey the concept of reasonable doubt to the jury; the constitutional requirement is only that "'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)) (modifications in original). The question we must answer is whether "there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [constitutional requirement]." *Id.* at 6.

The leading Supreme Court cases regarding the definition of reasonable doubt are *Victor* and *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam). In *Cage*, the Court disapproved an instruction that described reasonable doubt as "such doubt as would give rise to a grave uncertainty" and "an actual substantial doubt," and said that the certainty required "is not an absolute or mathematical certainty, but a moral certainty." 498 U.S. at 40. The Court's primary objection was to the modifiers "grave" and "substantial," which, in conjunction with the reference to "moral certainty," suggested a higher degree of doubt for acquittal than the constitutional standard requires. *Id.* at 41. Later, *Victor* made it clear that *Cage* was a narrow decision. The Court upheld two jury instructions with the "moral certainty" and "substantial doubt" language, and explained that the *Cage* instruction had been unconstitutional only because of the confluence of several damning factors, notably the juxtaposition of the "grave uncertainty" language with the "substantial doubt" language. *Victor*, 511 U.S. at 20. The *Victor* Court also noted that *Cage*'s formulation of the standard of review had been disapproved. *Id.* at 6 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991)).

In this case, the trial court expressly declined to provide a definition of "reasonable doubt" for the jury, but told a story that contained a definition based on an analogy to the doubt necessary to call off a wedding. The judge attributed the definition to a "federal prosecutor" and informed the jury that the definition

was "permissible at that time, in that federal jurisdiction." The judge quoted the prosecutor as equating reasonable doubt to "the kind of serious doubt that causes you to act or not act in matters that are serious, like calling off a wedding at the last minute." The judge dwelt on certain details – reminiscent of *The Philadelphia Story* – including the fact that the decision to call off the wedding came "at the last minute, after you've walked down the aisle and are waiting on the other party or waiting on the best man, or something like that, . . . after all the announcements are out and the gifts have been received and everybody's all dressed up and sitting in church, and the minister's looking at you, and all of a sudden you walk out." The judge pointed out the imprecision in that definition. Some people might stop a wedding at "the slightest bit of doubt." But others, he said, might not call off a wedding even if they thought they were "absolutely going to live a life of misery" and that the marriage was a "terrible, bad decision." The embarrassment and inconvenience to others would be too great. They "wouldn't budge." (R., supp. vol. 7, at 41-42.)

We agree with the OCCA that the trial judge in this case was not attempting to adopt that hypothetical interpretation as a definition of the reasonable doubt standard, and so we presume that the jury did not take him to be providing that definition. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (a jury is presumed to follow its instructions and understand the judge's answers to its questions).

-13-

Furthermore, we recognize that the judge recounted the wedding-day standard of reasonable doubt only to criticize it – a fact upon which the State heavily relies.

However, not every criticism of a mistaken standard is itself correct. The judge did not go on to say that the range of standards that individuals might derive from the wedding-day analogy is far broader than is constitutionally permissible. Specifically, he did not say that the standard for acquittal employed by the second group of people – those who "wouldn't budge" – was unconstitutionally high. Even granting that the jury did not take the wedding analogy as a mandatory definition of reasonable doubt, the judge's discourse misleadingly suggested that they had a degree of leeway broader than the Constitution permits.

That suggestion was immediately confirmed by the moral of the judge's story:

> The fact of the matter was, that reasonable doubt is a subjective matter that has to be resolved by each person, and each person in the individuality of his or her own conscience and reason. And furthermore, it's going to vary every case, because every case is different. . . .
> So, Oklahoma takes the position that it's wrong to tell you what reasonable doubt is. Only you can decide what is reasonable, in the light and under the circumstances of each individual case. Because, after all, it is your reason that we rely on to decide the evidentiary issues in the case. And, so, who are we to tell you what is reasonable and what is not? That is wholly within your province.

(R., supp. vol. 7, at 42-43.) This summation informed the jury that attempted definitions are not only ineffective but impermissible, not just because they might be confusing, but because they are intrusions on the discretion of each juror to make his or her own "subjective" determination of what is reasonable doubt.

As we see it, the problem is not that the jurors may have thought the judge was endorsing the "wedding cancellation" definition. He made quite clear that he disapproved of that definition. The problem is that the reasons the trial court gave the jury for why the definition was flawed were themselves misleading. The Oklahoma courts discourage providing a definition of reasonable doubt not because the term has a broad range of meanings, or because jurors are entitled to decide the meaning for themselves, but because the term is "self-explanatory." *Williams*, 572 P.2d at 259; *Underwood v. State*, 659 P.2d 948, 950 (Okla. Crim. App. 1983). Some terms – like "game" in Wittgenstein's celebrated example – carry distinct meanings to ordinary speakers of the English language even though they defy definition. *See* Ludwig Wittgenstein, *Philosophical Investigations* paras. 66-78 (G.E.M. Anscombe trans., 3d ed. 1958). To provide a definition of "reasonable doubt," the Oklahoma courts have concluded, is more likely to confuse the jury than to clarify its task. *Williams*, 572 P.2d at 259; *Underwood*, 659 P.2d at 950. The point is not that jurors should be unconstrained in their

-15-

choice of meanings, but that they will be more effectually constrained by the unadorned term "reasonable doubt" than by any conceivable definition.

The judge's explanation, however, implied that there is an extraordinarily broad range of possible meanings, including some which are plainly unconstitutional, and informed the jurors that they had to resolve the definitional issue for themselves, in the "individuality" of their own "conscience and reason." He thus subverted the "self-explanatory" character of the term and invited the jury to treat as "reasonable doubt" everything from "the slightest bit of doubt" to a stubborn refusal to budge even in the face of the strongest possible reasons, and suggested that any attempt to cabin their definitionary discretion is an invasion of their "province." This created a "reasonable likelihood that the jury understood the [remarks] to allow conviction" based on "a degree of proof below that required by the Due Process Clause." *Victor*, 511 U.S. at 6 (quoting *Cage*, 498 U.S. at 41). Furthermore, given the sweeping nature of the judge's language, it would have been unreasonable for the OCCA to conclude otherwise – especially if it did so, as appears, solely because the remarks were not technically a definition.

To be sure, the lack of a formal definition makes this case different from *Cage* and *Victor*. Those cases also involved formal instructions given to the jury prior to deliberation, not extemporaneous commentary during voir dire. However,

-16-

nothing in their rationale turns on whether the misleading statements are properly characterized as a definition or as instructions. Rather, the central question is the substantive one: whether the jury was reasonably likely to think it could convict using an improper standard. If it was, the OCCA could not reasonably refuse to grant relief solely because the jury's misimpression was caused by a different kind of statement.

Differences in the timing and purpose of potentially misleading comments are undoubtedly relevant in determining the likelihood that the comments influenced the jury. But in this case, it seems beyond reasonable disagreement that the remarks were influential. Although they occurred during voir dire, the three-day trial was short enough that they would not be a distant memory when the jury went to deliberate. And although the informality of voir dire might make judicial comments during voir dire less influential than formal instructions, the circumstances of this case suggest that the remarks were delivered at a particularly potent time. The judge delivered the wedding story in direct response to a potential juror's question about the meaning of "reasonable doubt." The juror's question highlighted to the entire jury pool the potential uncertainty in the standard. It is likely that the jurors were particularly receptive to the guidance they received at that time, when they were thinking about the issue and not overburdened with other issues and other instructions. Indeed, when the

prosecutor asked one prospective juror whether she could assess punishment "providing that we prove them guilty beyond a reasonable doubt, and the evidence is there," the juror clarified, "In my own mind." (R., supp. vol. 7, at 56.) This shows that the lesson of the judge's remarks had not been lost. Moreover, because of the Oklahoma rule, the jury instructions included no correct definition of "reasonable doubt" that might have dispelled the misleading impression the jury received during voir dire.

The judge's remarks made it reasonably likely that the jury would overestimate the amount of latitude it had in defining the reasonable doubt standard. His story, in combination with his emphasis on the subjective nature of each juror's decision regarding the meaning of the term, sent two unconstitutional messages: (1) that the reasonable doubt standard comprises as broad a range of burdens of proof as that suggested by the wedding analogy; and (2) that jurors have discretion to make their own subjective determination as to what that standard should be. We conclude that it would be an unreasonable application of clearly established federal law, as interpreted in *Cage* and *Victor*, to uphold this conviction.

## Conclusion

The decision of the district court is therefore **REVERSED** and **REMANDED**, with instructions to enter judgment granting Mr. Wansing's

-18-

petition for writ of habeas corpus unless the state retries him within a reasonable time to be determined by the district court. Appellant's motion to supplement the record is granted.