Opinion issued July 22, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00443-CR

NO. 01-09-00444-CR

———————————

James Ollie Meadows, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 184th District Court 

Harris County, Texas



 

Trial Court Cause Nos. 1143853 & 1143854

 



 

MEMORANDUM OPINION

          James
Ollie Meadows was charged by indictment with committing aggravated robbery with
a deadly weapon against complainant Thomas Welsh (trial court cause number
1143853) and complainant Christian Chudleigh (trial court cause number
1143854).  These cases were tried
together.  A jury convicted Meadows of
aggravated robbery in both cases and assessed punishment at thirty years’ confinement
in prison.  In his sole issue, Meadows contends
that the trial court reversibly erred by incorrectly describing the State’s
burden of proof during voir dire and by permitting the prosecutor to do the
same.  Because Meadows failed to raise
these objections at trial and because we conclude these complaints do not
constitute fundamental error, we affirm.

Background

A few weeks
before Christmas 2007, Brandi Moerbe spent an evening with friends Christian
and Cindy Chudleigh, celebrating Cindy’s birthday.  Just before midnight, the Chudleighs drove
Brandi to her car, which she had parked near their townhouse.  Moments after Brandi began to drive home, a
vehicle bumped her car from behind, pushing the front of her car into a ditch
and the rear wheels off the ground.  Brandi
immediately called Cindy and Christian, who met her several minutes later and
parked their car across the street from the ditch.  

A dark-colored
sedan drove up and parked near Brandi’s car. 
Meadows got out of the car and offered to help in exchange for
money.  Meadows was accompanied by
another man and a woman.  Although his
offer of assistance was initially declined, Meadows insisted on helping,
getting into Brandi’s car and trying to move it.  While the men worked to move Brandi’s car,
Brandi and Cindy moved Brandi’s personal belongings from her car to the
Chudleighs’ car across the street.  

Meadows told
the group that he was going to get a rope from his car.  Instead, he returned with a sawed-off
shotgun.  At trial, Brandi, Cindy,
Christian, Thomas, and a neighbor who watched the robbery from her nearby
apartment all testified consistently about what happened next.  Meadows stood in the middle of the street and
ordered all of them to get on the ground and give him their money.  He ordered Thomas, who was calling a tow
truck, to get off of the phone.  He held
the men at gunpoint and demanded money; then he walked across the street, held
the women at gunpoint, and demanded money and personal items.  The man who accompanied Meadows stayed with
the men while Meadows robbed the women.  

Meadows and
the other man returned to their car and attempted to leave, but their car would
not start.  Meadows again held Cindy at
gunpoint and threatened to kill her if she did not give him the keys to her
car.  Cindy did not have the keys.  Fearing for his wife’s life, Christian yelled
to Meadows that he had the keys to the car. 
While Meadows was distracted, Brandi and Cindy ran to the safety of a
neighboring townhouse, where the neighbors called the police.  Christian did not have the keys to his car,
either, but Thomas gave Meadows the keys to his truck instead.  Meadows fled, using Thomas’s truck to push
his car away from the scene of the robbery.

When the
police arrived, Thomas described his truck and gave them his license-plate
number.  The police apprehended Meadows
and his accomplice after a high-speed car chase followed by a foot chase.  Meadows and his accomplice were found with
Thomas’s truck and the money and belongings taken during the robbery.  Within approximately 20 to 30 minutes of the
robbery, the police brought the men back to the scene of the robbery for a
show-up identification.  Brandi, Cindy,
Christian, and Thomas separately looked at Meadows and positively identified him
as the man who had just robbed them at gunpoint.  Each testified that he or she had had a good
opportunity to see Meadows’s face earlier because the area was well-lit by both
streetlights and holiday lights and because of the time that he spent
ostensibly trying to help move Brandi’s car.  Each witness testified that he or she was
positive that Meadows was the robber at the time of the show-up identification;
each also positively identified him as the robber at trial.  For example, Cindy testified that she was so
certain it was Meadows at the time of the show-up identification, “I would have
put my life on the line for it.  I mean
I’m just that certain.”  She testified
that she was equally certain in court.

In addition
to the testimony from the complainants, a neighbor, who watched the robbery
from her bedroom window, testified consistently about the robbery.  She also positively identified Meadows at the
show-up identification and in court as the man who held the gun.

At trial,
Meadows denied any involvement in the crime. 
Meadows testified that he was walking around Houston looking for a bus
stop because he had taken the wrong bus and gotten lost.  He said he rented Thomas’s stolen truck from
a man whose name he did not know, who had solicited him for illegal drugs.  Meadows said the alleged “drug rental” was
for an unspecified amount of time and that he had planned to drive up and down
the street where he encountered the unknown man to see if he would show up to
claim the truck.  

The jury
convicted Meadows of robbing both Christian and Thomas.  On appeal, Meadows complains about alleged
error during jury selection, which he contends reduced the State’s burden of
proof.  During voir dire, the trial court
explained the State’s burden of proof to prospective jurors as follows: 

If they prove everything
beyond a reasonable doubt, then you must vote guilty.  Everybody kind of understand that?  Pretty straight forward.  Beyond a reasonable doubt will not be defined
for you.  Once upon a time we had a
definition.  The appellate courts said we
don’t need definitions.  Jurors are smart
people.  They know what beyond a
reasonable doubt is.  You know, kind of
like obscenity, you know it when you see it, that kind of thing. 

But we do know from case law
that it is a very high standard but it’s not 100 percent proof.  There are four different burdens of legal
proof in the law . . . there are four different standards in the law: Probable
cause, which is the standard the grand jury uses, the lowest; then
preponderance of the evidence, the mere tipping of the scales, anything more
than 50 percent, which is what you use in civil law; and then clear and
convincing evidence, which is the standard to take your children away from you
or to commit you to a mental hospital; and then, finally, the highest standard,
which is beyond a reasonable doubt. 

And the reason we use that
in our criminal courts is because someone could lose their liberty and go to
prison, and that’s why it’s the highest standard of all.  But although we know it’s a very high
standard, it is not 100 percent proof.  Because
how could anybody prove to you 100 percent that something happened unless you
were there and you saw it with your own eyes?  And then, of course, you would be a witness.  You would not be on the jury.

Does everyone think beyond a
reasonable doubt is a fair standard?  Can
everyone follow that standard in deciding if the defendant is guilty or not
guilty?  We know it’s a high standard,
and we know it’s less than 100 percent.  But
if you think of it in terms of percentages, it’s whatever it means to you.  For some people it is like 80 percent or 85.  For some people it’s 90 or 95.  For some people it may be 99 percent proof.  So, that’s up to you, as long as it’s a high
burden.  But it is not 100 percent. 

The defendant, of course,
gets the presumption of innocence.  Everybody
remember innocent until proven guilty? 

 

The
prosecutor also commented on the State’s burden of proof during voir dire:

What’s my
burden?  Beyond a reasonable doubt. A
reasonable doubt.  Notice it’s not beyond
all doubt.  No.  It’s not beyond a shadow of doubt.  No because that exist[s] in what?  TV.  We
all know that.  You’ve seen Perry Mason,
Law & Order. Beyond a shadow of a doubt, beyond all doubt.  The reality is I can’t prove something to you
beyond all doubt.  Why is that?  You’d have to be there and if you were there
what would you be?  Witness.  A witness.  So the law doesn’t allow us to define beyond a
reasonable doubt but we often times equate it to common sense.  Use your common sense and that’s all that we’re
asking for is that you use your common sense. 



          Meadows’s
trial counsel did not object to either the trial court’s or the prosecutor’s descriptions
of “reasonable doubt.”            

Analysis

          In
his sole issue, Meadows contends that the descriptions of reasonable doubt
lowered the State’s burden of proof to a level below that which would satisfy
constitutional requirements.  

Preservation of Error

          Ordinarily,
to preserve an error for appellate review, the complaining party must make a “timely,
request, objection, or motion.”  Tex.
R. App. P. 33.1(a)(1); see
Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (holding that
appellant waived complaint about trial court’s explanation of reasonable-doubt
standard during voir dire by failing to renew objection when trial court
repeated explanation); see also Moore v.
State, 907 S.W.2d 918, 923 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d)
(holding that appellant waived complaint about trial court’s comment during
voir dire about weight of evidence); Espinosa
v. State, 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no
pet.) (“When appellant complains about an improper remark by the prosecutor
during voir dire, appellant must object when the remark is made.”).  Meadows did not object to either the trial
court’s or the prosecutor’s comments during voir dire.  Thus he has waived his complaints on appeal, see Tex. R. App. P.
33.1(a)(1), unless the alleged error of which he complains was a fundamental
error affecting substantial rights, in which case no objection is necessary to
preserve error.  Tex. R. Evid.
103(d).

Relying on Blue v. State, 41 S.W.3d 129 (Tex. Crim.
App. 2000) (plurality op.), Meadows argues that no objection was necessary
because the voir dire comments challenged on appeal undermined his presumption
of innocence and created an unacceptable risk that the jury did not apply a
sufficiently high standard of proof in determining his guilt. 

In Blue, the Court of Criminal Appeals held
that an appellant need not always object to voir dire statements to preserve
error.  In that case, the trial court
apologized to the venire panel for a long delay, told them that the delay was
caused by the defendant’s indecision about whether to take a plea bargain, and
noted that it would have preferred the defendant to plead guilty.  Blue,
41 S.W.3d at 130.  Because these comments
compromised the defendant’s presumption of innocence, the Court of Criminal
Appeals held that no objection was necessary to preserve the issue for
appellate review.  Blue, 41 S.W.3d at 132–33.

Some constitutional rights may be waived if the proper
request, objection, or motion is not asserted in the trial court.  See
Solis v. State, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997,
pet. ref’d) (noting that almost every constitutional and statutory right may be
waived by failing to object in trial court). But some legal rights cannot be
forfeited.  See Saldano v. State, 70 S.W.3d 873, 887–88 (Tex. Crim. App. 2002);
Marin v. State, 851 S.W.2d 275, 279
(Tex. Crim. App. 1993), overruled on
other grounds, Cain v. State, 947
S.W.2d 262, 264 (Tex. Crim. App. 1997).  For
example, “absolute, systemic rights,” like jurisdiction over the person or
subject matter of the case, may be raised for the first time on appeal.  See
Saldano, 70 S.W.3d at 887–88; Marin, 851 S.W.2d at 279. 

“It is an unresolved issue whether and when a trial court’s comments
constitute fundamental constitutional due process error that may be reviewed in
the absence of a proper objection.”  McLean v. State, No. 01-08-00466-CR,
2010 WL 335611, at *4 (Tex. App.—Houston [1st Dist.] Jan. 28, 2010, no pet.)
(noting that Blue is a non-binding
plurality opinion); see also Jasper v.
State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (same); Marshall v. State, No. 01-08-00734-CR, 2009
WL 3400977, at *3 (Tex. App.—Houston [1st Dist.] Oct. 22, 2009, pet. ref’d)
(same).  Three cases illustrate relevant
circumstances in which such allegations were held not to constitute fundamental
error.

In Jasper v. State,
the defendant argued that the trial court’s comments during testimony unfairly
prejudiced him.  Jasper, 61 S.W.3d at 421. 
The Court of Criminal Appeals found no fundamental error because the judge’s
comments—correcting a misstatement or misrepresentation of previously admitted
testimony, maintaining control and expediting the trial, and displaying
annoyance toward the defense counsel—did not rise “to such a level as to bear
on the presumption of innocence or vitiate the impartiality of the jury.”  Id.  

Likewise, in McLean v.
State, an appeal from a conviction for prostitution, the trial court expressed
an opinion during voir dire that prostitution is not a victimless crime.  The defendant argued on appeal that the trial
court’s comments conveyed the judge’s opinion of the case.  McLean,
2010 WL 335611, at *1–2.  This Court held
that the error, if any, was not fundamental because the trial court’s comments
did not bear on the defendant’s presumption of innocence or vitiate the
impartiality of the jury, especially in light of the trial court’s granting of
numerous motions in limine sought by the defendant and correctly instructing
the jury in its charge.  Id. at *5.

Finally, in Marshall v.
State, the defendant argued that the trial court’s voir dire comments about
reasonable doubt impermissibly lowered the State’s burden of proof.  Marshall,
2009 WL 3400977, at *1–2.  The trial
court stated, “Basically I guess the Legislature figures everybody is
reasonable and they would know a reasonable doubt when they see it.”  Id.
at *1.  This Court held that there was no
fundamental error because the trial court’s comments did not taint the
presumption of innocence or vitiate the impartiality of the jury.  Id.
at *3. 

We now consider the allegedly harmful voir dire statements to
determine whether Meadows has alleged fundamental error.

The Trial Court’s Comments

          Meadows challenges two comments that
the trial court made during voir dire about the concept of reasonable doubt:
(1) that the jurors would know reasonable doubt when they saw it and (2) that
proof necessary to satisfy a juror beyond a reasonable doubt was “whatever it
means to you.”  The trial court’s first statement,
“You know, kind of like obscenity, you know it when you see it, that kind of
thing,” was part of a longer comment comparing and contrasting the various
burdens of proof used in legal cases.  Unlike
the comments made by the trial court in Blue,
which conveyed the trial court’s opinion that Blue was guilty, this statement
by the trial court did not convey any opinion as to Meadows’s guilt or
innocence.  See Marshall, 2009 WL 3400977, at *3; see also Ayala v. State, No. 01-03-00386-CR, 2004 WL 1233997, at *2
(Tex. App.—Houston [1st Dist.] June 3, 2004, pet. ref’d) (not designated
for publication) (holding that trial court did not err by explaining during
voir dire that reasonable doubt is “kind of like pornography . . . you know it
when you see it”); Zamora v. State,
No. 13-04-00155-CR, 2008 WL 1822512, at *1 (Tex. App.—Corpus Christi Apr. 24,
2008, pet. ref’d) (not designated for publication) (holding that trial court
did not err by instructing the jury, “I think reasonable doubt is kind of like
a story they used to tell on an old elderly Supreme Court Justice . . . And he
said, well, I don’t know really the definition of pornography, but I know it
when I see it.  Reasonable doubt is a lot
the same way.”).  

          The other statement by the trial court
was similar to that considered in Copeland
v. State, in which the Fourteenth Court of Appeals concluded that the trial
court did not abuse its discretion by overruling the appellant’s objection to
the prosecutor’s statement that reasonable doubt is “whatever it means to
you.”  No. 14-07-00475-CR, 2008 WL
4735199, at *2 (Tex. App.—Houston [14th Dist.] Oct. 30, 2008, pet. ref’d) (not
designated for publication).  In Copeland, as here, the appellant relied
on Wansing v. Hargett, a habeas
corpus case from the Tenth Circuit, to support his contention that the
prosecutor’s statement was erroneous.  See 341 F.3d 1207 (10th Cir. 2003).  Relief was granted in Wansing because the trial court’s comments about the meaning of
“reasonable doubt” in that case sufficiently emphasized subjectivity so as to
include unconstitutionally low burdens such as a “stubborn refusal to budge
even in the face of the strongest possible reasons.”  Id.
at 1214.  The Fourteenth Court of Appeals
distinguished Wansing by noting that
under Texas law, jurors must determine what proof beyond a reasonable doubt
means to them, and the prosecutor’s statement was not erroneous.  Copeland,
2008 WL 4735199, at *2 (citing Murphy v.
State, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003)); see Garrett v. State, 851 S.W.2d 853,  (Tex. Crim. App. 1993) (“[A] n individual
juror must determine what proof beyond a reasonable doubt means to him, for the
law does not tell him.”).  We likewise
conclude that the trial court’s statement “it’s whatever it means to you” did
not misstate Texas law or otherwise unfairly lower the burden of proof such as
to amount to fundamental error.  See Rogers v. State, 795 S.W.2d 300, 306
(Tex. App.—Houston [1st Dist.] 1990, pet. ref’d) (trial court’s statement to
venire panel that “the bottom line is going to be what beyond a reasonable
doubt is to you” held not to be fundamental error).

The Prosecutor’s Comments

          Meadows also challenges the
prosecutor’s voir dire statements, which urged the jurors to use their common
sense: “So the law doesn’t allow us to define beyond a reasonable doubt but we
often times equate it to common sense. 
Use your common sense and that’s all that we’re asking for is that you
use your common sense.”  Meadows’s own trial
counsel also described the State’s burden of proof in relation to common sense:

Like the Judge said it could be up to some people as
much as 98, 99 percent.  It can’t be the
hundred percent remember but it can be in the high nineties easily if you’re a
common sense person but you give your common sense experiences to that and the
only way you can convict is if they push that burden of proof beyond a
reasonable doubt.

 

For
the reasons discussed above, this statement by the prosecutor did not compromise
the presumption of innocence as did the trial court’s statements in Blue, and we conclude it did not
constitute fundamental error.  See Mitchell v. State, No.
01-07-00289-CR. 2008 WL
4530683, at *5 (Tex. App.—Houston [1st Dist.] Oct. 9, 2008, pet. ref’d) (not
designated for publication).

CONCLUSION

We conclude that neither the trial court’s comments nor the
prosecutor’s comments amounted to fundamental error.  Therefore, Meadows was required to object to
preserve this issue for appellate review. 
Because he failed to object, Meadows failed to preserve his appellate issue.  

We overrule Meadows’s sole issue, and, we affirm the judgments
of the trial court. 

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Alcala, Massengale, and Wilson.[*]

Do
not publish.   Tex. R. App. P. 47.2(b).

 











[*]           The
Honorable Davie Wilson, retired Justice, Court of Appeals, First District of
Texas at Houston, participating by assignment. 
See Tex. Gov’t Code Ann.
§ 74.003(h) (Vernon 2005).